# EDMOND R. LEACH *v.* PENN-MAR MERCHANTS ASSOCIATION, INC. ET AL.

[No. 813, September Term, 1972.]

*Decided August 10, 1973.*

The cause was argued before ORTH, C. J., and CARTER and GILBERT, JJ.

*Richard S. Paulson,* with whom was *James E. Davitt* on the brief, for appellant and cross-appellee, Edmond R. Leach.

*Joseph A. DePaul* and *James Ignatius Keane,* with whom were *DePaul, Willoner & Kenkel* on the brief, for appellee-cross-appellant, Penn-Mar Merchants Association, Inc. *James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for other appellees.

GILBERT, J., delivered the opinion of the Court.

In Prince George's County, Maryland, police officers, when not engaged in the performance of regularly assigned duty, may obtain part-time employment, subject to certain restrictions.[1] In addition, they apparently may perform the part-time job while dressed in the uniform of the Prince George's County Police Department. The utilization of that conferred privilege by former Officer Michele S. DeBari[2] led to the bitterly contested case giving rise to the voluminous record before us in this appeal.[3]

On the evening of June 1, 1968, Edmond R. Leach (Dr. Leach), the appellant, a dentist, went to the Penn-Mar Shopping Center in Prince George's County with his wife and children. While his wife and some of the children were in one of the stores located in the shopping center, Dr. Leach and the remaining children were standing on a sidewalk that is situate in front of the stores and immediately contiguous

---

[1]. The restrictions are that the police officer may not work in or for an establishment that dispenses or serves alcoholic beverages.

[2]. Officer DeBari retired from the police force in Oct. of 1969 or 1970.

[3]. The record contains 1166 docket entries; uncounted pages of pleadings and other allied papers; 459 pages of depositions; and 546 pages of trial transcript.

to the parking area of the shopping center. Dr. Leach observed a motor vehicle operated by a Mrs. Martha Conti, then known as Mrs. Martha Perry, enter the parking lot and make a right turn into one of the parking lanes. As Mrs. Conti made the turn, another automobile, owned by Alvin Labrie and operated at the time by Paul C. Taylor, backed out of a designated parking space and into the right side of Mrs. Conti's vehicle. Mrs. Conti stopped her car and Mr. Taylor moved his vehicle forward into the parking space. Within moments, two men identified themselves to Mrs. Conti as witnesses, but she did not learn their names. Almost simultaneously, Mrs. Conti observed Dr. Leach standing on the sidewalk. Dr. Leach, after a lapse of "ten or fifteen minutes," went over to Mrs. Conti. Officer DeBari was observed walking along the sidewalk of the shopping center. The persons who had assembled around the scene of the mishap drew Officer DeBari's attention to the accident by waving their hands and arms. Officer DeBari responded by leaving the sidewalk, crossing the fire lane, and approaching the damaged vehicles. Mrs. Conti testified that she asked Officer DeBari for a report of the accident. Her statement is confirmed by Dr. Leach. Officer DeBari said that Dr. Leach demanded the report as a "citizen." DeBari said he could not write the report because he did not have police accident reports or traffic summonses with him. DeBari also stated that the accident was very minor. The evidence shows that there was some discussion about the writing of a report, and that Dr. Leach, at the suggestion of DeBari, called the County Police Department. A patrol vehicle arrived. Officer DeBari obtained a "Subpoena for Witness" and a State of Maryland, Motor Vehicle Accident Report from the patrol cruiser. He issued the "subpoena" to Dr. Leach. The subpoena states:

"A-18357

SUBPOENA FOR WITNESS
Prince George's County, Maryland
Police Department

I, Michele DeBari, a Police Officer for Prince George's County, Maryland, do hereby summon

Dr. Edward R. Leach, 9506 Nottingham Ave. 599-6558 Upper Marlboro, Md. to appear before the Honorable Judge of the People's Court at Forest Hgts in and for the County aforesaid, on the 26 day of June 1968, at 8:30 o'clock A.M. to testify in the case of Taylor, Paul on an action of reckless driving.

. S/Dr. Edmond R. Leach

ISSUED June 1 1968          Time 8:45 P.M.

Location issued          scene

(Issued by authority of Section 182, of Article $66^1/_2$, of the Annotated Code of Maryland)

WITNESS—YELLOW          COURT—WHITE
OFFICER—PINK"

DeBari then completed the accident report. He said that on three or four occasions, during the time he was preparing the report, that he found it necessary to request Dr. Leach not to interfere with his, DeBari's, performance of his duty. Dr. Leach denied this, but Mr. Taylor and Mr. Labrie verified DeBari's statement. According to DeBari, he placed the doctor under arrest for obstructing justice by interfering with a police officer because of Dr. Leach's persistent interference, even after prior warnings.

Dr. Leach was handcuffed, frisked, placed in a police vehicle, and taken before a Justice of the Peace, where he was released on $18.50 collateral. Dr. Leach complained of maltreatment by DeBari in the form of a lacerated finger, permanent injury to his right shoulder, cut gums, and a broken tooth. Dr. Leach sought and obtained medical care and treatment following his release. The doctor alleged that he lost 85 $^1/_2$ hours from work as a result of the injury to his shoulder, and calculated the value of his time at $25.00 per hour up until 1970, and $30.00 per hour after that, for a total loss of income of $2255.00.

Notwithstanding the witness subpoena issued to Dr. Leach, the officer did not issue motor vehicle law violation summonses to either of the drivers involved in the accident. DeBari explained his failure to do so by saying that after

conferring with the office of the State's Attorney, it was decided not to place charges against either driver.

When the obstruction of justice by interfering with a police officer charge was called to trial in the then People's Court, Dr. Leach was acquitted. An appeal of that decision by the State to the Circuit Court was dismissed. Dr. Leach instituted suit in the Circuit Court for Prince George's County on April 18, 1969 against Officer DeBari, Penn-Mar Merchants Assn., Inc., Realty Management Corp., and Suburban Gardens, Inc.[4] The suit charged: (1) assault and battery, (2) false imprisonment and unlawful arrest, (3) slander, (4) malicious prosecution, and (5) negligent hiring. As a result of the defendants' motions, pursuant to Rule 542 a 1, the cause of action was removed to Charles County for trial. In the interim, Dr. Leach filed another cause of action in the Circuit Court for Prince George's County, alleging the same grounds as those set forth in his first declaration against DeBari et al., but in the second suit Dr. Leach sued 28 tenants of the Penn-Mar Shopping Center.[5] On February 25, 1971, Dr. Leach voluntarily dismissed 9 of the merchants and moved to consolidate both law suits for trial. On August 4, 1971, the defendants in the second suit filed suggestions of removal, and the second case was also transferred to Charles County. The cases were ordered consolidated on September 1, 1971, and trial was set for May 8, 1972. Because it appeared that the cases could not be tried in Charles County on the agreed date of May 8, 1972, the consolidated cases were then removed to Calvert County. In the Circuit Court for Calvert County, motions for summary judgment, pursuant to Rule 610, were granted as to the 19 remaining defendants who had been joined in the second suit. *See Leach v. Citizens Bank of Maryland et al.*, 17 Md. App. 391, 302 A. 2d 634 (1973). At the trial, following the close of Dr.

---

**4.** Realty Management Corp. managed the shopping center. Suburban Gardens, Inc. was the owner of the portion of land and improvements where the accident occurred. The Penn-Mar Merchants Assn., Inc. had hired DeBari as a part-time private policeman.

**5.** Although suit was filed, one of the counsel for Dr. Leach requested the sheriff to "hold up service on these pleadings until we notify you to do so." Consequently, service was not effected until sometime later.

Leach's evidence, directed verdicts were granted in favor of Realty Management Corp. and Suburban Gardens, Inc. At the close of all the evidence, the appellees again moved for a directed verdict, but their motions were denied. The jury returned a verdict of $1.00 compensatory damages and $1.00 punitive damages as against DeBari, and $15,000.00 compensatory damages and $10,000.00 punitive damages against Penn-Mar Merchants Assn., Inc. Judge William B. Bowie granted Penn-Mar's motion for judgment N.O.V.[6]

In this Court, Dr. Leach presented 7 contentions for our review, but in the light of our holding we need but consider the propriety *vel non* of the granting of the judgment *non obstante verdicto*.

It is patent that in order for Penn-Mar to be liable to Dr. Leach for the actions of Officer DeBari that DeBari must be found to have been the agent of Penn-Mar at the time that he arrested Dr. Leach. *Gallagher's Estate v. Battle*, 209 Md. 592, 122 A. 2d 93 (1956), *cert. denied*, 352 U. S. 894, 77 S. Ct. 133, 1 L.Ed.2d 87 (1956); *Globe Indemnity Co. v. Victill Corp.*, 208 Md. 573, 119 A. 2d 423 (1956); *Henkelmann v. Insurance Co.*, 180 Md. 591, 26 A. 2d 418 (1942). Recognizing the agency issue presented in the instant case, Judge Bowie, *in camera*, immediately prior to instructing the jury, observed to counsel:

> "We may have some problem with keeping the corporate defendant [Penn-Mar] in, in view of the facts in the case, but at this juncture while we have the jury here available to have the case submitted to them, we are going to keep all counts in, and we are going to keep both defendants in." [7]

We conclude, for the reasons stated *infra*, that DeBari was not Penn-Mar's agent when he arrested Dr. Leach, and that

---

**6.** DeBari did not appeal, and we were advised that the $2.00 judgment had been paid.

**7.** Rule 563 encourages trial judges to submit doubtful questions to the jury in order that a verdict might be received, so that if the trial judge should grant a judgment N.O.V. and an appellate court enters a reversal, the verdict may be reinstated without the necessity, expense, and delay occasioned by a new trial. Wright v. Baker, 197 Md. 315, 79 A. 2d 159 (1951). *See also* Deremer v. Liston, 252 Md. 571, 250 A. 2d 622 (1969).

Judge Bowie correctly granted the judgment N.O.V. in favor of the appellee.

On June 1, 1968, the date of the happenings giving rise to this appeal, there existed in Prince George's County an Ordinance known as *Prince George's County Code of Ordinances and Resolutions*, (1967), § 15-14 (24), which provided in pertinent part:

> "Members of the police department are held to be always on duty, although periodically relieved from the routine performance thereof. They are subject at all times to orders from the proper authorities and to call by citizens, and the fact that they may be off duty shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring such action."

Consequently, notwithstanding DeBari's admitted employment as a part-time employee by Penn-Mar, he was, as a matter of law, on duty with the Police Department. We must then decide whether DeBari, at the time he arrested Dr. Leach, was engaged in the performance of a police department function, or whether he was engaged in the business of his part-time private employer.

In *Henkelmann v. Insurance Co., supra*, the Court of Appeals stated, at 601:

> "Of course, even an agent may be subject to the control of his principal in respect to some portion of the work to be performed, and under such circumstances the doctrine of *respondeat superior* can be invoked. *But it has been distinctly held that the doctrine applies in such a case only when the relationship of master and servant existed in respect to the very thing from which the injury arose.*" (Emphasis supplied).

*See also Gallagher's Estate v. Battle, supra; Leachman v. Belknap Hardware & Mfg. Co.*, 260 Ky. 123, 84 S.W.2d 46 (1935).

At the time of Dr. Leach's arrest, Md. Ann. Code art. 66 1/2, § 182 provided:

"All peace officers and the Maryland State Police shall have authority to summon witnesses to give testimony under oath upon any charge preferred under this article." [8]

A peace officer was defined in Md. Ann. Code art. 66 1/2, § 2 (35) as:

"Every officer authorized to direct or regulate traffic or to make arrests for violations of any of the provisions of this article." [9]

A security guard or private guard is not a peace officer within the meaning of § 2 (35). Thus, we think it readily apparent that such a guard was without authority to issue traffic citations or to summon witnesses. Consequently, at the time of the issuance of the summons to Dr. Leach, Officer DeBari was performing the function of a peace officer of Prince George's County. We know of no provision in Maryland law which authorizes a private guard or security guard to enforce the provisions of the Maryland Motor Vehicle Law — Art. 66 1/2. Moreover, the testimony established that Officer DeBari's function for Penn-Mar was to patrol the sidewalks, to keep the peace and good order upon those sidewalks, and to keep the fire lane clear. The fire lane was a traffic access set aside for emergency fire equipment. The collision between Mrs. Conti and Mr. Taylor did not occur in the fire lane, and even if it had, DeBari, had he not been a peace officer of Prince George's County, would

---

8. The Motor Vehicle Code was substantially changed by Act of 1970, ch. 534, § 1. The former § 182 is now codified as § 11-103b. It provides:

"All police officers shall have lawful authority to summon witnesses to give testimony under oath upon any charge preferred under this article. No person shall refuse to obey a summons."

9. The definition of a police officer was also changed by Act of 1970, ch. 534, § 1. This is now codified as § 1-163. It provides:

"Police officer means every officer authorized to direct or regulate traffic or to make arrests for violations of any of the provisions of this article or local or other traffic laws or regulations."

have been powerless to issue either traffic citations or a summons for a witness. He, just as any other citizen, would have been required to call for the assistance of the county police. Once DeBari stepped from the scope of his employment with Penn-Mar and reassumed the role of the county peace officer, Penn-Mar had no jurisdiction over him. It was not responsible for any action of DeBari performed solely as a county peace officer. *Henkelmann v. Insurance Co., supra; Gallagher's Estate v. Battle, supra.* The plethora of cases cited by appellant are all inapposite.

Dr. Leach also argues that because of the "increasing use of security — special police guards and officers by mercantile establishments" that merchants should not be allowed to escape liability for false arrest by the simple method of hiring a police officer who is "on duty" but "relieved from routine performance thereof." The doctor's argument should be directed to the executive and legislative departments of the county government, and not to this Court.

In view of our holding herein, we need not and do not consider the appellee's cross appeal. Leach's appeal from the entry of summary judgments in favor of the 19 tenants is also before us. *See Leach v. Citizens Bank of Maryland, supra.* We affirm the entry of those judgments.

*Judgments affirmed.*
*Costs to be paid by appellant and cross-appellee.*