JOHN EARL HUGER *v.* STATE OF MARYLAND

[No. 135, September Term, 1978.]

*Decided June 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

John Earl Huger was convicted at a court trial in the Criminal Court of Baltimore of shoplifting goods of Giant of Maryland, Inc. On direct appeal, the judgment entered against him was affirmed by the Court of Special Appeals. *Huger v. State,* No. 410, September Term, 1978, decided 27 November 1978, unreported. We granted Huger's petition for a writ of certiorari. We affirm the judgment of the Court of Special Appeals.

Huger was arrested by Antonio P. Silva, who was employed by Giant as a special policeman. On 1 July 1977, Silva, working as a detective in Giant's Reisterstown Road store, observed Huger in the "Deli section." Silva saw Huger pick up three packages of ham, go to the "Frozen Food section," and place the three packages "down the front of his pants." Huger then went to the "Bakery" where he selected five loaves of bread and a jar of mayonnaise. Going to the check-out counter, he paid for the bread and mayonnaise; he did not pay for the ham which remained inside his pants. When Huger was given the receipt for the articles he paid for, Silva arrested him and recovered the packages of ham from Huger's person.

Pursuant to Maryland District Rule 720 a, Silva, as the arresting officer, swore to, subscribed, and caused to be filed in the District Court of Maryland, a statement of charges, "formally" charging that Huger had shoplifted three pounds of ham, valued at $7.50, the property of Giant.[1] When Huger appeared before the District Court, he deprived that court of its jurisdiction by electing to be tried by a jury. Code (1974) § 4-301 (b) (2) and § 4-302 (d) of the Courts and Judicial Proceedings Article.

The case came on for trial in the Criminal Court of Baltimore on the statement of charges as the charging document. Maryland Rule 710 d. Before entering a plea to the merits, Huger moved "to dismiss the charges." He claimed that the charging document was defective because it did not comply with M.D.R. 711 b 2 which provides, *inter alia:* "A statement of charges shall be signed by the peace officer or by the judicial officer who files it. . . ."[2] He argued that Silva,

---

1. M.D.R. 720 a provides:
   When a defendant is arrested without a warrant, the officer who has custody of the defendant shall forthwith cause a statement of charges to be filed against the defendant. For the purpose of considering pretrial release of the defendant, the officer shall at the same time, or as soon thereafter as is practicable, file a verified statement of facts showing probable cause that the defendant committed the offense charged.

2. The Court of Appeals, by Order dated 31 January 1977, approved and adopted, effective 1 July 1977, a revision of Chapter 700 of the Maryland District Rules, recommended by the Court's Standing Committee on Rules of Practice and Procedure in its Fifty-Third Report, together with

as a special policeman, was not a "peace officer" within the contemplation of the rule. The trial judge denied the motion. The Court of Special Appeals considered Huger's contention to be without merit: "Since Officer Silva acted within the area of his authority we find no defect in the charging document. . . ." We agree.

Code (1957, 1978 Repl. Vol.) Art. 41, §§ 60-70 reflect a comprehensive scheme of the General Assembly concerning "special policemen." The appointment of a special policeman is an executive function with designated guidelines:

> The Governor may appoint and deputize as special policemen persons he deems qualified for special police commissions. A commission shall be issued for each individual approved by the Governor. The commission shall indicate the period the commission is to be in force as well as the property it is intended to cover or the purpose for which it was issued. [§ 60.]

There are provisions for applying for a special police commission, § 61; investigation of an applicant, § 62; the uniform and badge to be worn and the identification to be carried, § 65; the term of the commission, § 68, and its termination or revocation, § 70. Among those who may make "[a]pplication for special police commission" are "any firm, corporation, partnership, sole proprietorship, or other entity

---

amendments made thereto by the Court. M.D.R. 711 b 2, as set out in Md. Code (1957, 1977 Repl. Vol., 1978 Cum. Supp.), reads in its entirety:

> A citation shall be signed by [the] *a* peace officer or other person authorized by law before it is issued. An information shall be signed by the State's Attorney. A statement of charges shall be signed by the *peace* officer [who files it] or by the judicial officer who files it, authorizing the filing of the charging document. After a plea to the merits, any objection that the charging document was not signed is waived.

The italicized words were added and the bracketed word and phrase were deleted by amendment of the Court. Apparently M.D.R. 711 b 2 appears as it does through the printer's inadvertence.

We observe that we provided that "the peace officer" be one of those persons authorized to sign the statement of charges rather than "the officer who files it" in order to conform to the Rules Committee's proposal that a citation be signed by the "peace officer."

existing and functioning for a legitimate and legal business purpose, in order to protect its business property." § 63 (4). Each person appointed shall take the constitutional oath, Md. Const. Art. I, § 6, and be deemed to be the employee of the one who requested his appointment, § 67. The special policeman and the requesting authority for whose convenience and protection he was appointed are responsible for any abuse of his powers. § 64. "Neither the State nor any subdivision or municipality of the State shall be liable or accountable in any way for any act or omission by an individual appointed [a special policeman], unless the subdivision or municipality has requested the appointment of the individual as a special policeman, and the request was granted as provided for herein." § 69.

The General Assembly clearly and unambiguously set out the powers and duties of a special policeman:

> [A] special policeman is charged with the protection and preservation of peace and good order on the property described in the application for the commission. He has the power to arrest persons who trespass or commit offenses thereon. He has, and may exercise, the powers of a police officer upon the property described in the application for the commission and may exercise these powers in any county or city of the State in connection with the care, custody, and protection of other property of the requesting authority or other property, real or personal, for which it has assumed an obligation to maintain or protect. [§ 64.]

A special policeman is given further powers "[i]n order to facilitate the orderly ingress and egress of traffic to and from the property described in the application [for his commission]. . . ." *Id.*

> [H]e has authority to direct and control traffic on public highways and roads adjacent to and in the immediate vicinity of the property described in the application when this activity is approved in advance

by the Superintendent of the Maryland State Police.... [*Id.*[3]]

The development of the statute into its present form was carefully traced by Wilner, J., speaking for the Court of Special Appeals in *Gray v. State*, 38 Md. App. 343, 346-353 (1977), 380 A. 2d 1071, *cert. denied*, 282 Md. 732 (1978). The court in *Gray* concluded from the extensive legislative history of the statute that the charging in § 64 of a special policeman "with the protection and preservation of peace and good order on the property described in the application for the commission,"

> sufficed to permit a special policeman, when on his employer's property, to enforce the criminal law generally. By virtue of that phrase, his jurisdiction there was quite broad, and was not limited only to those offenses of some particular interest to his employer. [38 Md. App. at 349.]

The court further determined that the statutory grant to a special policeman of the authority to exercise the powers bestowed on him "in any county or city of the State in connection with the care, custody, and protection of other property of the requesting authority or other property, real or personal, for which it has assumed the obligation to maintain or protect,"

> was intended, and, in its natural meaning has the effect, of vesting special **policemen** with the same general police power off the employer's premises described in the application for their commission as they have on such premises, provided that such general police power may only be exercised off the

---

3. "[H]owever, only a special policeman with a probationary or permanent appointment as a security officer [see Art. 41, § 70A (9)] or a member of any industrial police force who holds a special police commission, and has completed the basic training course for police officers as established by the Police Training Commission, pursuant to § 70A of [Art. 41] may make arrests or issue traffic citations for violations of any of the provisions of the Maryland Vehicle Law or any other State or local traffic laws or regulations. He may exercise this power only upon the property of his employer as described in the application for the commission unless he is in active pursuit of an individual for the purpose of immediate apprehension." Art. 41, § 64.

> described premises in connection with other property in which the employer has some ownership interest or over which the employer has assumed an obligation to maintain or protect. [*Id.* at 353.]

In short,

> [i]t is not the police power itself that is limited, but only the circumstances under which it may be exercised off the particular property described in the application for the commission. So long as the special policeman is acting in connection with the care, custody, or protection of his employer's other property, he may exercise to the full the powers of a police officer. . . . [*Id.* at 347.]

We are in accord with these views.

The Maryland District Rules do not contain a definition of "peace officer." We accept, however, for the purpose of decision, Huger's notion that the commonly understood meaning of the phrase is a person charged with the duty "to enforce and preserve the public peace," quoting H. Black, Black's Law Dictionary (4th ed. Rev. 1968). But, we do not share his belief that application of the phrase to a "special policeman" within the contemplation of Art. 41, §§ 60-70 "is contrary to traditional definitions." Rather, we think that special policemen under the statute fall squarely within that definition. According to Black, "public peace" is "[t]he peace or tranquility of the community in general; the good order and repose of the people composing a state. . . ." A "police force" is "[a] body of persons trained in methods of law enforcement and crime prevention and detection, and given authority to maintain the peace, safety, and order of the community," that is, to enforce and preserve the public peace. The American Heritage Dictionary of the English Language (1969). A "policeman" or "police officer" is "[a] member of a police force." *Id.* Therefore, a policeman is a peace officer. Since a special policeman may exercise to the full the powers of a police officer in the circumstances here, he also is a peace officer. It follows that Silva was a peace officer authorized to sign the statement of charges.

Huger points to *Leach v. Penn-Mar Merchants Ass'n,* 18 Md. App. 603, 308 A. 2d 446, *cert. denied,* 269 Md. 761 (1973), in support of his position. *Leach* is not apposite. What was then § 2 (a) (35) of Art. 66½ defined peace officer as "[e]very officer authorized to direct or regulate traffic or to make arrests for violations of any of the provisions of this article." *Leach* held that a security guard or private guard is not a peace officer as so expressly defined within the contemplation of § 182 providing that "peace officers" shall have authority to summons witnesses to give testimony under oath upon any charge preferred under the article. The statutory powers and duties of a "special policeman" readily distinguish him from a "security guard" or a "private guard." Other cases cited by Huger concerned with the distinction between peace officers and "private security guards" are also inapposite in light of the Maryland statute concerning special policemen.

Huger suggests that the inclusion of special policemen as peace officers under M.D.R. 711 b 2 is "contrary to the scheme of the District Rules," and "would produce illogical results." He gives as examples M.D.R. 720 d and M.D.R. 737 b. The former provides: "The summons and the charging document shall be served upon the defendant by a peace officer." The latter reads: "Summons for a witness authorized by this Chapter may be served by a peace officer or a constable. . . ." He quotes Code (1974, 1978 Cum. Supp.) § 2-605 (b) of the Courts and Judicial Proceedings Article:

> All criminal and traffic process, including warrants and summonses for witnesses, shall be served by the constables of the respective districts, or by the sheriffs of the respective counties or by State or local police as the administrative judge of the district shall direct. However, summonses to witnesses in these cases may be served by mail, rather than by personal service, if the administrative judge of the district directs.

Huger urges that, read together, the rules and the statute indicate that peace officers include only constables, sheriffs and State or local police. It may be that in view of the statute

only peace officers who are constables, or sheriffs or "State or local police" may serve criminal and traffic process. But this does not mean that a peace officer who is a special policeman may not sign a statement of charges filed by him as required by M.D.R. 711 b 2. In other words, a person may be a peace officer by reason of being a special policeman or a constable, or a sheriff or a member of the State or local police department. We see nothing contrary to the scheme of the District Rules in the limitation of the types of peace officers who may perform certain functions, nor do we find any "illogical results" produced thereby. The rules do not use "peace officer" as a term of art including only expressly designated persons and restricted to one narrow meaning which must be rigidly applied no matter what the context of its use. "In interpreting the rules of criminal procedure, our practice has been to avoid semantic nicety and to adopt that interpretation which will best implement the policies underlying the particular rule." *Johnson v. State,* 282 Md. 314, 321, 384 A. 2d 709 (1978).

Huger includes in his brief the question whether the evidence was sufficient to sustain the conviction. The petition for a writ of certiorari submitted by Huger in proper person, as best we can comprehend it, was confined solely to the matter of the statement of charges being signed by the special policeman, as was the petition filed later by the Public Defender.[4] Therefore, the question of the sufficiency of the evidence is not properly before us. Md. Rule 811 a 3 (d).

The question of the sufficiency of the evidence was presented to the Court of Special Appeals. That court determined that the evidence was legally sufficient to establish the corpus delicti of the crime of shoplifting and Huger's criminal agency. In any event, it is plain that the intermediate appellate court was correct in its holding. Md. Rule 1086 provides that when the action has been tried by the

---

4. The sole question presented by the Public Defender's petition was:

Did the Court of Special Appeals err in holding that a special police officer employed by a private corporation is a "peace officer" for purposes of Maryland District Rule 711 b (2)?

lower court without a jury, as here, the Court of Special Appeals may not set aside the judgment "on the evidence unless clearly erroneous and due regard shall be given to the opportunity of the lower court to judge the credibility of the witnesses." If the trial court believed Silva, as it obviously did, his testimony showed directly and by proper inferences, that Huger removed goods "from the immediate place of display . . . with the intent to appropriate the same to [his use], or to deprive the owner of the use, value, or any part thereof" and that he concealed the goods with a like intent. Code (1957, 1976 Repl. Vol.) Art. 27, § 551A (a) (1) and (3). This was enough to sustain the verdict. *See Brooks v. State,* 277 Md. 155, 162, 353 A. 2d 217 (1976).

*Judgment affirmed; costs to be paid by appellant.*