575 A.2d 1244

**Dewayne W. WATERS**

v.

**STATE of Maryland.**

**No. 147, Sept. Term, 1989.**

Court of Appeals of Maryland.

July 3, 1990.

Carroll L. McCabe, George E. Burns, Jr., Asst. Public Defenders, and Alan H. Murrell, Public Defender, on brief, Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. and J. Joseph Curran, Jr., Atty. Gen., on brief, Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ.

MURPHY, Chief Judge.

At a nonjury trial in the Circuit Court for Anne Arundel County (Goudy, J.), DeWayne Waters was convicted of possession of cocaine and sentenced to a term of imprisonment. During the pendency of his appeal before the Court of Special Appeals, we granted certiorari on our own motion to decide whether, as Waters claimed, the Fourth Amendment prohibition against unreasonable searches and seizures was applicable in the circumstances of this case.

## I.

On the evening of May 16, 1988, Paul Madden was employed as a security guard at Wayson's Corner in Anne Arundel County. He accosted Waters as he leaned against a vehicle in the parking lot. Observing that Waters appeared to have a large object in his pocket, Madden reached into Waters's pocket and extracted a beer can and a plastic bag containing a whitish substance. Madden then called

the Anne Arundel County Police Department and Waters was arrested and charged with possessing cocaine.

Upon Waters's motion to suppress the seized cocaine, Madden testified that he was a plainclothes security guard licensed by the Maryland State Police and working in that capacity on the night of Waters's arrest. Asked whether he was a "special police officer," Madden replied, "No, I was just a plainclothes security officer for Wayson's." He testified that he did not have the general arrest powers of a policeman but believed that he had the power to detain on a felony. He said that he had attended two security schools in the early 1980's for training. He stated that he had been involved in about seventeen "drug busts" over a one-year period; his involvement had been as "eyewitness, spotting people, pointing them out, identifying them." Madden said that he was wearing a suit and tie with his "security officer" badge clipped to his belt on the night of Waters's arrest.

Waters testified at the suppression hearing that at the time of the search, he was standing next to his friends' car when Madden drove up, jumped out of his car, drew a gun and forced him to lean against the car. Waters said Madden had "lost his grip" and was "out of control." He said Madden pulled the plastic bag from his pocket without asking permission.

Waters argued that Madden was a state agent by reason of his employment and that the search and seizure conducted by him was in violation of the Fourth Amendment. Waters conceded that Madden was a private security guard employed by a private detective agency regulated by what is now Maryland Code (1989), §§ 13–101 through 13–801 of the Business Occupations and Professions Article. But Waters maintained that security guards are like special police officers who are commissioned by the Governor and exercise general police powers in the protection of their employer's property. Waters suggested that both security guards and special policemen are agents of the State because their duties are similar to those of regular police

officers; they are both regulated by the State and authorized to wear badges and to obtain permits to carry guns. Thus, Waters urged the trial judge to conclude that Madden's seizure of the plastic bag involved state action, and because it was unreasonable, the evidence should be suppressed.

Judge Goudy found that Madden's security guard employment did not make him an agent of the State. In denying the motion to suppress, he said:

"[T]he Court finds from the evidence ... that the witness in the case was not a police officer, not an agent of the State. The witness was licensed by the State, but merely being licensed ... does not show enough control to be an agent.

"The witness was an employee of a private enterprise.... The prohibition against [search and] seizure is a sanction against the State, not against private citizens, which is what the witness was in this case. The search[,] while it could very well have been a trespass in this case, a trespass to the person, is not inadmissible ... by the State against the Defendant."

Before us, Waters renews his argument that because private security guards employed by private detective agencies, and special police officers commissioned by the Governor, perform duties similar to those of regular police officers, Madden's seizure of the plastic bag constituted illegal state action. Alternatively, Waters suggests that notwithstanding his concession at trial that Madden was a private security guard, reversal of his conviction is nevertheless mandated because the trial judge made no factual findings as to whether Madden was a security guard or a special policeman. As to this, he argues that Madden's use of the phrase "security officer" or "security guard," in describing his employment, was inconclusive as to his actual status.

## II.

The Fourth Amendment of the United States Constitution guarantees the right of individuals to be secure

against unreasonable searches and seizures. It applies to actions by the State, *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), but generally does not apply to actions by private individuals. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 467, 41 S.Ct. 574, 574, 65 L.Ed. 1048 (1921). Thus when a private individual obtains incriminatory matter from an accused, no matter how improperly, and such matter comes into the possession of the government without a violation of the accused's rights by governmental authority, the exclusionary rule does not prohibit its use at trial. *Bowers v. State,* 298 Md. 115, 139–40, 468 A.2d 101 (1983); *Herbert v. State,* 10 Md.App. 279, 284–85, 269 A.2d 430 (1970). A private search or seizure may, however, trigger Fourth Amendment protections if the private individual whose actions are in question, "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971).

■ Maryland Code (1986 Repl.Vol.), Article 41, §§ 4–901 through 4–913 (entitled "Special Policemen"), authorizes the Governor to "appoint and deputize as special policemen persons he deems qualified for special police commissions." § 4–901. Section 4–902 provides that applications for a commission shall be made to the Superintendent of the Maryland State Police by governmental agencies, political subdivisions, colleges or universities, or by private business entities for the purpose of protecting their properties. Once commissioned, a special police officer "has, and may exercise, the powers of a police officer upon the property," including the power to preserve the "peace and good order" of the property and to make arrests. § 4–905. A special police officer is considered the employee of the applicant for the commission, § 4–909, and is generally limited to exercising police powers on the property. *Huger v. State,* 285 Md. 347, 352, 402 A.2d 880 (1979). Nevertheless, the police power itself is not so limited since the words "peace and

good order," contained in the statute, " 'permit a special policeman, when on his employer's property, to enforce the criminal law generally.' " *Id.* at 351, 402 A.2d 880, quoting *Gray v. State,* 38 Md.App. 343, 349, 380 A.2d 1071 (1977), *cert. denied,* 282 Md. 732 (1978). When special police officers are enforcing the criminal law, they are exercising governmental powers which involve state action. *See, e.g., Griffin v. Maryland,* 378 U.S. 130, 135, 84 S.Ct. 1770, 1772, 12 L.Ed.2d 754 (1964) (holding that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action"). *Griffin* involved special deputy sheriffs, employed by a private park, who were deputized pursuant to the provisions of a county ordinance which invested them with powers similar to those exercised by a special policeman commissioned by the Governor. The Court said that the arrests made by these special deputies constituted state action. *See also United States v. Lima,* 424 A.2d 113, 118 (D.C.App.1980) (where security guard has powers akin to regular police officer, and is appointed by government official even though privately employed, sufficient trappings of state authority exist to trigger Fourth Amendment restrictions). Thus, had Madden been a special police officer commissioned by the Governor under § 4–901, his seizure of the plastic bag would have been subject to the Fourth Amendment. *See Huger, supra; Pratt v. State,* 9 Md.App. 220, 263 A.2d 247 (1970).

■■■■ Unlike special policemen commissioned by the Governor, security guards are not vested with arrest or other police powers. They are employed by private detective agencies which are licensed by the Superintendent of the Maryland State Police under Code, Title 13 of the Business Occupations Article. Section 13–101(k) of the Article defines a "Security guard" as an individual "who provides security guard services"; these services are defined in subsection (1) to include "any activity that is performed for compensation as a security guard to protect any individual or property, except the activities of an indi-

vidual while performing as ... (2) a special police officer [commissioned by the Governor under Article 41 of the Code]." As employees of detective agencies engaged to guard the property of their employer's clients, security guards have not been granted police powers by statute and therefore are not state agents in any traditional sense for purposes of the Fourth Amendment. *See Huger, supra,* 285 Md. at 353, 402 A.2d 880; *Leach v. Penn–Mar Merchants Ass'n,* 18 Md.App. 603, 610, 308 A.2d 446, *cert. denied,* 269 Md. 761 (1973). Without governmental powers, security guards are acting as private citizens when protecting property, and their private status is not altered because their interest in protecting property coincides with the public's interest in preventing crime generally. The Attorney General of Maryland has also recognized that licensed security guards are not state agents. *See* 50 Op. Att'y Gen. 309 (1965) (holding that since security guards act upon the authorization of their employer, that authorization can be no broader than that which the employer possesses, namely, the authority of a private citizen). *See Stevenson v. State,* 287 Md. 504, 413 A.2d 1340 (1980) (defining a citizen's power to arrest); *Great Atlantic & Pacific Tea Co. v. Paul,* 256 Md. 643, 655, 261 A.2d 731 (1970) (shopkeeper's authority to arrest or detain is limited to the authority of a private citizen). Moreover, mere state licensing of a private individual's occupation, without more, does not constitute sufficient state control to make the individual a state agent. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Bowers, supra,* 298 Md. at 140, 468 A.2d 101. Nor does extensive state regulation of itself convert the actions of those regulated into state action. *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453.

### III.

The burden was upon Waters, as the proponent of the motion to suppress, to establish that his Fourth Amendment rights were violated by the challenged search and seizure. *Ricks v. State,* 312 Md. 11, and cases cited at 26,

537 A.2d 612 (1988). In the same vein, the burden of establishing government involvement in a private search rests on the party objecting to the admissibility of the evidence. *See U.S. v. Snowadzki,* 723 F.2d 1427, 1429 (7th Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984); *U.S. v. Miller,* 688 F.2d 652, 657 (9th Cir.1982); *U.S. v. Freeland,* 562 F.2d 383, 385 (6th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 484, 54 L.Ed.2d 315 (1977).

The only evidence in the case was that Madden was a licensed security guard at the time he seized the plastic bags, and the trial judge so held. Water's argument that Madden was a state agent is wholly unconvincing. Consequently, Judge Goudy correctly determined that the seized cocaine was admissible in evidence, there being no showing (or even an allegation) that Madden was working in collusion with the police at the time of the search, or otherwise acted as an instrument of the State in the performance of his duties.

JUDGMENT AFFIRMED, WITH COSTS.