Dear Delegate Holt:
You have requested our opinion whether a special police officer has the authority to transport and maintain custody and control over an individual for purposes of obtaining an emergency evaluation of an apparent mental disorder. A special police officer may do so only if the officer is a "peace officer" for purposes of Title 10, Subtitle 6, Part IV of the Health-General ("HG") Article, Maryland Code, the emergency evaluation law.
Our opinion is as follows: A special police officer, acting solely in that capacity, may not exercise the authority granted to a "peace officer" under the emergency evaluation law.
 I Emergency Evaluations
A. Emergency Petitions
HG, § 10-622 describes the circumstances under which an emergency evaluation may be sought:
 (a) A petition for emergency evaluation of an individual may be made under this section only if the petitioner has reason to believe that the individual has a mental disorder and that there is clear and imminent danger of the individual's doing bodily harm to the individual or another.
 (b) The petition for emergency evaluation of an individual may be made by:
 (1) A physician, a psychologist, or a health officer or designee of a health officer who has examined the individual;
 (2) A peace officer who personally has observed the individual; or
(3) Any other interested person.
HG, § 10-622 requires a physician, psychologist, or health officer or designee to give a signed petition for an emergency evaluation to a "peace officer." In the case of a petition signed by a lay petitioner, the petition must first be endorsed by a court. HG, § 10-623. In either case, a peace officer with a signed or court-endorsed petition is required to take the individual to the nearest emergency facility for evaluation. HG, § 10-624.[1]
The purpose of the emergency evaluation is to determine whether the individual meets the requirements for involuntary admission. § 10-624. An individual who does not meet the criteria for involuntary admission must be released after the evaluation, unless the individual consents to voluntary admission or was under arrest and subject to evaluation by court order. Generally, a peace officer is not required to stay with an individual once they arrive at the emergency facility. HG, § 10-624. A peace officer must stay with the individual, however, if a physician has asked the officer's supervisor to allow the peace officer to remain to assist with a violent individual or the court has required the emergency evaluation subsequent to an arrest. HG, § 10-624 and 10-626. In the latter circumstance, if the individual does not meet the requirements for involuntary admission, the peace officer must return the individual to the court that day with a physician's report or, if the court is not in session, the next day that the court is in session. HG, § 10-626.
B. Peace Officers
For purposes of the emergency evaluation law, HG, § 10-620(f) defines "peace officer" as "a sheriff, a deputy sheriff, a State police officer, a county police officer, a municipal or other local police officer, or a Secret Service agent who is a sworn special agent of the United States Secret Service or Treasury Department authorized to exercise powers delegated under 18 U.S.C. § 3056."
As originally enacted, the definition of "peace officer" included only a sheriff, State police officer, or a municipal or other local police officer. See Chapter 761, Laws of Maryland 1971 (codified at former Article 59, § 22). In 1982, however, the definition was expanded to include deputy sheriffs and county police officers, "as these peace officers are those most often involved in emergency evaluations." See Revisor's Note, Chapter 21, § 2, Laws of Maryland 1982 (recodified at HG, § 12-620). Finally, in 1991, the definition of "peace officer" was expanded to include federal Secret Service and Treasury agents. Chapter 27, Laws of Maryland 1991.
To facilitate the role of peace officers in the emergency evaluation process, HG, § 10-621 requires the Department of Health and Mental Hygiene to publish and distribute on an annual basis a list of emergency facilities and their addresses and distribute this list to "each health department, judge of a court, sheriff's office, police station, and Secret Service office in this State." HG, § 10-621(2).
 II Special Police Officers
Title 4, Subtitle 9 of Article 41 contains a comprehensive scheme relating to the Governor's commission of special police officers, including the application process, uniforms and identification, duties, terms of commissions, and the requirement of a State oath. Since 1880, the Governor has had the authority to issue commissions to special police officers for the protection of specified property. See Chapter 460, Laws of Maryland 1880. In 1969, the General Assembly rewrote prior law and combined it with existing law relating to special police officers who protect government property. See Chapter 581, Laws of Maryland 1969. This 1969 statute, which has changed little since, made explicit the powers of special police that had previously been articulated in case law and in opinions of this office. See 80 Opinions ofthe Attorney General ___ (1995) [Opinion No. 95-047 (November 8, 1995)]. These powers, in relevant part, are currently codified as follows:
 Each person appointed under this subtitle as a special policeman is charged with the protection and preservation of peace and good order on the property described in the application for the commission. He has the power to arrest persons who trespass or commit offenses thereon. He has, and may exercise, the powers of a police officer upon the property described in the application for the commission and may exercise these powers in any county or city of the State in connection with the care, custody, and protection of other property of the requesting authority or other property, real or personal, for which it has assumed an obligation to maintain or protect. . . . He may exercise this power only upon the property of his employer . . . unless he is in active pursuit of an individual for the purpose of immediate apprehension.
Article 41, § 4-905.
When appropriately related to the property described in the commission, the authority of a special police officer to enforce the criminal law is coextensive with that of a governmental police officer. The authority has been expressly extended to include not only making arrests but also investigating offenses related to the property described in the application for a commission and filing an application for a statement of charges. See generally Huger v.State, 285 Md. 347, 402 A.2d 880 (1979); Opinion No. 95-047, at 2-3.
 III Limited Statutory Definition of "Peace Officer"
In Huger, the Court of Appeals of Maryland was confronted with a question similar to that posed by your opinion request whether special police officers were "peace officers" for the purpose of filing a statement of charges after a warrantless arrest. 285 Md. at 348-49. (interpreting Maryland District Rule 720a, now Maryland Rule 4-211(b)(1)). Although the Court reached the conclusion that special police officers were "peace officers" within the meaning of the rules pertaining to arrests, it did so for reasons that support a different conclusion here.
In finding that special police officers were "peace officers" under the rule, the Court explicitly noted that the Maryland District Rules did not define "peace officer." Thus, the Court applied the common understanding of the term "peace officer": a person charged with enforcing and preserving the public peace. The similarity of this charge and that set out for special police officers in Article 41, § 4-905 supported the Court's finding. As the Court observed:
 In other words, a person may be a peace officer by reason of being a special policeman or a constable, or a sheriff or a member of the State or local police department. We see nothing contrary to the scheme of the District Rules in the limitation of the types of peace officers who may perform certain functions . . . . The rules do not use "peace officers" as a term of art including only expressly designated persons and restricted to one narrow meaning which must be rigidly applied no matter what the context of its use.
Huger, 285 Md. at 354.[2]
In enacting the emergency evaluation law, however, the General Assembly chose not to rely on the common meaning of "peace officer" applied in Huger. Not only did the General Assembly specifically define the term "peace officer," it did so in a way that excludes special police officers. See HG, § 10-620(f). In the original statute and in two specific amendments, the General Assembly made clear its intention that "peace officers" authorized to petition for emergency evaluation were only specified individuals employed by State, federal, or local law enforcement agencies. The definition does not extend to those individuals commissioned as special police officers in connection with their protection of the property of a private employer.
This straightforward construction of the definition of "peace officer" is underscored by HG, § 10-621, which requires DHMH to distribute annually a list of emergency facilities where an emergency evaluation can be performed. By limiting that distribution to sheriffs' offices, police stations, and Secret Service offices in the State (in addition to health departments, judges, and courts), the General Assembly clarified its intent that only officers of federal, State, and local law enforcement agencies are authorized to take individuals for emergency evaluation.
Finally, the conclusion that special police officers are not "peace officers" for purposes of seeking emergency evaluations is supported by general case law applicable to special police officers. Although special police officers are permitted to exercise police authority off the premises of their employer, they may do so only in connection with "the care, custody, and protection" of real or personal property that the officer or the officer's employer has assumed an obligation to protect. Gray v.State, 38 Md. App. 343, 353, 380 A.2d 1071 (1977), cert. denied,282 Md. 732 (1978) (interpreting HG, § 4-905). The obligations attendant to seeking an emergency evaluation will sometimes be inconsistent with this limitation. In obtaining an emergency evaluation, a peace officer may be required not only to take the evaluee to an emergency facility but, if the individual is violent, to stay until the evaluation is completed. Moreover, in the case of an evaluee who has been arrested, a peace officer would be required to maintain custody of the individual until the evaluation is completed, including returning the individual to court the day of the evaluation or the next day. These tasks are inconsistent with the responsibilities for which a special police officer has been commissioned.
 IV Conclusion
In summary, it is our opinion that the term "peace officer," as used in the emergency evaluation law, does not include special police officers. Accordingly, unless a special police officer is also employed as a police officer by State or local law enforcement or as a Secret Service or U.S. Treasury agent and is able to act in that capacity, a special police officer is not authorized to act as a peace officer for purposes of the emergency evaluation law.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Sandra Barnes Assistant Attorney General
_____________________ Jack Schwartz Chief Counsel Opinions and Advice
[1] All petitioners, peace officers, and emergency facilities have the immunity from liability described in § 6-624 of the Courts and Judicial Proceedings Article. See HG, § 10-629.
[2] See also Opinion No. 95-047, at 4-5 (applying Huger to find that special police could exercise other functions of police and "peace officers," such as conducting criminal investigations, collecting evidence, and filing an application for a statement of charges by affidavit).
 *Page 128