748 A.2d 499

**Terrence D. CALLAHAN**

v.

**Deborah A. BOWERS, Personal Representative
of the Estate of Steve B. Bowers, et al.**

**No. 1091, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 13, 2000.

**166**

Gerald W. Ueckermann, Jr. (O'Malley, Miles, Nylen & Gilmore, P.A., on the brief) Calverton, for appellant.

Paul W. Spence (Sharon A. Christie, Spence, Kohler, Christie & Pulver, P.A., and Nevett Steele, Jr., on the brief) Towson, for appellees.

Argued before MOYLAN, DAVIS and JAMES S. GETTY, (retired, specially assigned), JJ.

DAVIS, Judge.

Steven Bowers, an employee of the Giant Food Store, was shot and killed while working on November 19, 1996, by Charles Thomas, a suspected shoplifter in the store on Sinclair Lane in Baltimore City. Subsequently, appellees Deborah Bowers, as personal representative of the estate of Steven Bowers and his surviving wife, as well as his surviving children, sued appellant Terrence Callahan in the Circuit Court for Baltimore City for negligence in his capacity as a security guard on duty at the store. On May 14, 1999, appellant filed for summary judgment, claiming an entitlement to qualified public immunity in his capacity as a special police officer, commissioned, pursuant to MD. CODE, art. 41 (1997 Repl. Vol, 1999 Supp.), § 4–901 *et seq.* A hearing was held on appellant's motion on June 25, 1999. An opinion was issued by the court on June 29, 1999, in which the judge found that special police officers are not entitled to qualified public official immunity and denied appellant's motion for summary judgment. Subsequently, appellant filed this appeal and presents us with the following questions, which we rephrase:

I. Did the trial court err as a matter of law in denying appellant qualified public immunity in his capacity as a special police officer?

II. Did the trial court err in suggesting gross negligence as an alternative basis to deny appellant summary judgment?

We answer question one in the affirmative; we decline to answer appellant's second question. Accordingly, we shall reverse the judgment of the circuit court.

## FACTUAL BACKGROUND

The events giving rise to this appeal occurred on November 19, 1996, at the Giant Food Store on Sinclair Lane in Baltimore City. At approximately 3:00 a.m., appellant, who was the security guard, apprehended and detained Thomas on suspicion of shoplifting. Upon being seized, several items thought to be from the store fell from beneath Thomas's coat, in addition to a plastic bag containing a white substance. Appellant escorted Thomas to the manager's office, searched him, and instructed another employee to call the police. Thomas was not handcuffed or restrained and he attempted to escape the office through a ceiling tile. Appellant pulled Thomas down by his legs, pulled out his gun, pointed it to Thomas's back, and instructed him to lay on the ground. After Thomas refused to comply, what occurred next is in dispute. Appellees state that appellant placed his gun in its holster but did not secure it. Appellant does not concede that fact. The parties do agree that it was at that time that Thomas struck appellant in the face, and again tried to escape through the ceiling. Appellant again pulled Thomas down by his legs and attempted to strike Thomas with a chair, at which time Thomas approached appellant and obtained control of the gun. He then shot appellant in the side and proceeded to escape from the office. In the course of fleeing the store, Thomas fatally shot Steven Bowers, a stock clerk.

Subsequently, on February 8, 1999, appellees brought a wrongful death action in the Circuit Court for Baltimore City against appellant alleging negligence. Appellant filed a motion for summary judgment, claiming immunity due to his status as a special police officer and, on June 25, 1999, a hearing was held on the motion. On June 29, 1999, the circuit court found that appellant was not entitled to public official immunity and, accordingly, denied his motion for summary judgment. From that order, appellant timely filed this appeal.

## DISCUSSION

### I

 Preliminarily, appellant's brief includes argument that this appeal from the court's summary judgment ruling qualifies under the collateral order doctrine. Appellees concede this point and we concur that the decision below satisfies the four requirements of a final appealable judgment as articulated in *Harris v. Harris*, 310 Md. 310, 316, 529 A.2d 356 (1987)(*quoting Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206, 477 A.2d 759 (1984)). The order in this case: 1) conclusively determined as a matter of law that appellant did not qualify for qualified immunity, 2) resolved an important issue because if appellant is entitled to immunity, he may be entitled to forego trial, 3) decided the issue of immunity, which is separate from the underlying claim of negligence, and 4) concerned an issue that is effectively unreviewable on appeal. *Id.* We, therefore, will proceed to evaluate the primary substantive issue appellant raises.

Appellant contends that the circuit court erred in deciding that he is not subject to public official immunity in his capacity as a special police officer. He explains that a special police officer has been deemed by the courts of Maryland to possess police powers and is considered under the law to be a peace officer. *Huger v. State*, 285 Md. 347, 352, 402 A.2d 880 (1979). Because special police officers perform the functions of police officers within their approved jurisdictions, appellant argues that they, too, are entitled to a qualified public immunity. Appellees, on the other hand, assert that, because special police officers function solely in the interest of their employers, they are not public officials and, therefore, do not qualify for immunity.

 We begin our discussion with an explication of the authority of a special police. A special police officer is not a private security guard. While a special police officer may be employed as a private security guard, he or she is separate and distinct, and the State entrusts him or her with certain

powers not available to a regular private security guard. The Court of Appeals has said, "The statutory powers and duties of a 'special policeman' [or policewoman] readily distinguish him [or her] from a 'security guard' or a 'private guard.' " *Huger,* 285 Md. at 353, 402 A.2d 880. The Governor is authorized to appoint special police officers who receive a commission designating the property the commission covers or other purpose for which the commission is issued. Art. 41, § 4–901. Those who may apply for a special police commission include: 1) any State or agency thereof with a property interest in this State, 2) any municipal county or governmental body of the State with a property interest to protect, 3) any college, university, or public school system with an interest to protect its property or its students, and 4) "any firm, corporation, partnership, sole proprietorship, or other entity existing and functioning for a legitimate and legal business purpose, in order to protect its business property." Art. 41, § 4–904 (1997 Repl.Vol.). Additionally, the statute governing special police officers confers upon them the following powers and duties:

> Each person appointed under this subtitle as a special police officer is charged with the protection and preservation of peace and good order on the property described in the application for the commission. The officer has the powers to arrest persons who trespass or commit offenses thereon. The officer has, and *may exercise, the powers of a police officer* upon the property described in the application for the commission and may exercise these powers in any county or city of the State in connection with the care, custody, and protection of other property of the requesting authority or other property, real or personal, for which it has assumed an obligation to maintain or protect.

> . . .

> The officer may exercise this power only upon the property of the officer's employer as described in the application for the commission unless the officer is in active pursuit of an individual for the purpose of immediate apprehension. . . .

Art. 41 § 4–905 (emphasis added). We recently considered whether a police officer had qualified immunity while working as a security guard, *Lovelace v. Anderson,* 126 Md.App. 667, 730 A.2d 774, *cert. granted,* 355 Md. 610, 735 A.2d 1105 (1999); however, no cases have directly addressed whether a special police officer is entitled to qualified immunity by virtue of his or her status as a special police officer.

In *Huger,* the Court of Appeals addressed a challenge to the validity of a special police officer's signature on a criminal charging document. Huger was arrested, pursuant to a statement of charges sworn out by the special police officer who worked for Giant Food Store and had apprehended Huger after witnessing him shoplifting some delicatessen meat. The Court upheld the validity of the officer's signature on the statement of charges and, in doing so, conducted an analysis of the powers of special police officers. *Huger,* 285 Md. at 349–52, 402 A.2d 880. A peace officer was defined as "a person charged with the duty 'to enforce and preserve the public peace,....'" *Id.* at 352, 402 A.2d 880 (*quoting* BLACK'S LAW DICTIONARY (4th ed. Rev. 1968)). The Court concluded that, "[s]ince a special policeman [or policewoman] may exercise to the full the powers of a police officer in the circumstances here, he [or she] also is a peace officer." *Id.*

We concluded in *Gray v. State,* 38 Md.App. 343, 347, 380 A.2d 1071 (1977), *cert. denied,* 282 Md. 732 (1978), that the statute expressly provides special police officers with "the powers of a police officer." That power is limited to "any place in the State (i.e., away from particular property described in the application) but only 'in connection with the care, custody, and protection of other property ... for which (the employer) has assumed an obligation to maintain or protect.'" *Id.* (*quoting* Art. 41, § 4–905). We pointed out in *Gray,* that it is not the police power itself that is limited, but only when the special police can enforce it. *Id.* In other words, special police have full police powers in their respective jurisdiction. We further explained that, when enforcing the criminal law, the duties of these special police officers are the same as police officers. *Id.* at 348, 380 A.2d 1071. After

conducting an evaluation of previous cases construing the special police officer statute,[1] we concluded that these officers possess "a dual identity, being primarily State officers but also agents of their sponsor/employer." *Id.*

It is clear from the analyses in *Huger* and *Gray* that special police officers are deemed to have the full power of a law enforcement officer when they are within their jurisdictions, as defined in the statute. Appellant reasons, therefore, that he is a public official and entitled to immunity.

In Maryland, governmental immunity is derived from two sources: 1) common law public official immunity and 2) statutory immunity. Common law immunity exists if: 1) the actor is a public official, not merely a government employee or agent; 2) the conduct occurred when the actor was performing discretionary, not ministerial duties; and 3) the act performed is within the scope of the actor's official duties. *Thomas v. City of Annapolis*, 113 Md.App. 440, 452, 688 A.2d 448 (1997). If all three elements are met, the individual enjoys a qualified immunity in the absence of "malice." *Id.* It is not always necessary, however, to meet all three elements.

The circumstances of each case must be weighed to determine if a classification as a public official is warranted. *Macy v. Heverin*, 44 Md.App. 358, 362, 408 A.2d 1067 (1979). In *Thomas*, we recognized that, generally, a police officer, in carrying out discretionary police duties, would fall under the protection of public official immunity. *Thomas*, 113 Md.App. at 457, 688 A.2d 448; *see also Lovelace*, 126 Md.App. at 690, 730 A.2d 774. In *Lovelace*, we observed that, otherwise, the effect of "[h]olding police officers liable in hindsight for every

---

1. A footnote in *Gray* cites the following cases as construing the special police officer statute, primarily in the context of the sponsor/employer's civil liability to third parties. *Baltimore & Ohio R. Co. v. Strube*, 111 Md. 119, 73 A. 697 (1909); *Baltimore, C. & A. Ry. Co. v. Ennalls*, 108 Md. 75, 69 A. 638 (1908); *Tolchester Beach Improvement Co. v. Scharnagl*, 105 Md. 199, 65 A. 916 (1907); *Baltimore & Ohio R. Co. v. Deck*, 102 Md. 669, 62 A. 958 (1906); *Tolchester Beach Improvement Co. v. Steinmeier*, 72 Md. 313, 20 A. 188 (1890).

injurious consequence of their actions would paralyze the functions of law enforcement." *Lovelace*, 126 Md.App. at 690, 730 A.2d 774 (*quoting Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.1995)). Generally, the Local Government Tort Claims Act (LGTCA) applies to all suits against local governments arising from incidents occurring on or after July 1, 1987. MD.CODE (1998 Repl.Vol., 1999 Supp.), CTS. & JUD. PROC. (C.J.) §§ 5–301–5–304; *see Thomas*, 113 Md.App. at 457, 688 A.2d 448. The LGTCA applies to all employees, and not, as the common law does, just to public officials. Additionally, C.J. § 5–321 provides immunity to officials of municipal corporations. *Thomas*, 113 Md.App. at 458, 688 A.2d 448. Moreover, the legislature has drafted several statutes conferring immunity on special types of government employees.[2] Appellant here does not claim immunity under any statutory authority; rather, he asserts that he qualifies for immunity under the common law as a public official.

In our recent decision in *Biser v. Deibel*, 128 Md.App. 670, 678, 739 A.2d 948 (1999), *cert. denied*, 357 Md. 482, 745 A.2d 436 (No. 580, February 10, 2000), we iterated what constitutes a public official. The necessary elements are: 1) the position was created by law and involves continuing, not occasional duties; 2) the holder of the office performs an important public duty; 3) the position calls for exercise of some portion of the sovereign power of the State; and 4) the position has a definite term for which a commission was issued and a bond and an oath were required.

Appellees simply state that appellant does not qualify as a public official and, therefore, is not entitled to public official

---

**2.** Article 65, § 8A (granting the same immunity that sheriffs, constables, police or peace officers enjoy to approved members of the Maryland National Guard); C.J. § 5–604 (granting immunity for civil liability to fire or rescue companies); C.J. § 5–605 (granting immunity to law enforcement officers who act outside their jurisdiction); C.J. § 5–611 (granting immunity to federal law enforcement officers regarding warrantless arrests). We note that the preceding citations are only a partial listing of statutes granting immunity and are not intended to represent all statutes in which the legislature has conferred immunity.

immunity. They posit that special police officers do not exercise sovereign power, and they act primarily on behalf of their employer and any subsequent benefit to the public from their actions is merely incidental.

The cases of *Huger* and *Gray* make it clear that, when a special police officer enforces the criminal law within his or jurisdiction, he or she is a peace officer. In *Waters v. State*, 320 Md. 52, 575 A.2d 1244 (1990), the Court of Appeals addressed the constitutionality of a warrantless search and seizure by a private duty security guard. In the course of determining the validity of the search, the Court looked to the authority and status of special police officers. The security guard in *Waters* was not a commissioned special police officer and, as a consequence, his seizure of a plastic bag containing cocaine from Waters's pocket did not constitute State action. The Court explained that, had the security guard been a special police officer, commissioned under Art. 41 §§ 4–901–4–913, the seizure would have been subject to the Fourth Amendment. *Waters*, 320 Md. at 58, 575 A.2d 1244. The Court held that, "[w]hen special police officers are enforcing the criminal law, *they are exercising governmental powers which involve [S]tate action.*" *Id.* (citing *Griffin v. Maryland*, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964) (emphasis added)).

The plain words of the statute charge a special police officer with the duty to protect generally and preserve the peace and good order on the property within his or her jurisdiction. Specifically, in the instant case, appellant was engaged in enforcing MD.CODE (1996 Repl. Vol., 1999 Supp.), art. 27 §§ 341 and 342 (Theft Statutes), when he was subjected to civil liability during the course of his employment as a special police officer. He was thus enforcing the criminal law and, in doing so, exercising governmental powers. Once a special police officer undertakes to enforce those powers, his or her duty mirrors that of a regular police officer. *See Gray*, 38 Md.App. at 348, 380 A.2d 1071. Under *Huger, Gray,* and *Waters*, it is clear that a special police officer's actions to

enforce the criminal law constitute State action. In *Gray*, we quoted with approval an opinion of the Attorney General, which concluded that " 'the power which a special officer exercises under authority of the subtitle is a power of government, not his employer.' " *Gray*, 38 Md.App. at 348, 380 A.2d 1071 (quoting 49 Op. Att'y Gen. 353, 355 (1964)).

Pellucidly, then, when special police officers are enforcing the criminal law, they possess all of the powers of a regular police officer and are acting for the benefit of the sovereign and the public at large. This duty, conferred by statute on special police officers, coincides with their duty to their employer. The Court of Appeals has held "that a police officer is a 'public official' when acting within the scope of his [or her] law enforcement function." *Bradshaw v. Prince George's County*, 284 Md. 294, 302, 396 A.2d 255 (1979) (citations omitted). Qualified immunity attaches for civil liability with respect to duties performed within the scope of the police officer's authority by reason of his status as a public official. *Id.* at 303, 396 A.2d 255. Because special police officers act as regular police officers when enforcing the criminal law, with the full powers of a police officer, a special police officer is considered a public official when acting to enforce the criminal law.

We now turn to the remaining elements of qualified public immunity to determine appellant's status. As stated, *supra*, in addition to being a public official, in order for qualified immunity to attach, the conduct must be discretionary, not ministerial. *Thomas*, 113 Md.App. at 452, 688 A.2d 448. Additionally, the action must be within the scope of the actor's official duties. *Id.* Appellant meets these further standards. The decision to detain Thomas was clearly a discretionary act and it was within his scope of authority as a special police officer to detain a suspected shoplifter within his jurisdiction. We hold, therefore, that appellant, acting within the scope of the authority of a special police officer enforcing the criminal law, is entitled to qualified public immunity, and

is consequently shielded from civil liability in the absence of malice or gross negligence.

## II

Appellant next contends that the circuit court erred in providing an alternative basis to deny summary judgment based on gross negligence. The court's opinion stated:

> In this case, [appellant's] conduct is not so patently reasonable as to require granting him summary judgment. Unlike the officer in *Lovelace v. Anderson*, [126] Md.App. [667, 730 A.2d 774] (1999), who was faced with two armed robbers, [appellant's] actions may have served to escalate a routine, unarmed shoplifting into a fatal shooting.

At the end of the above paragraph, the court made the following footnote:

> Even if a qualified immunity defense is available at trial, it may be insufficient to prevent a liability finding for grossly negligent conduct. The [appellees] could, of course, amend their Complaint to allege gross negligence. Then, should the trial judge—who would not be bound by this ruling—permit the defense, the jury could determine whether the [appellant's] conduct was grossly negligent.

(Citations omitted.) Appellant contends that the court's opinion provides an alternative basis for denying the immunity claim when neither party raised that basis.

 Appellees concede that gross negligence was not a claim raised in the case *sub judice*. The court's opinion makes no finding of gross negligence. The footnote does not constitute separate grounds for denial of the motion; it is merely *dicta* that includes an anticipated argument and is not binding on the court. Accordingly, whether gross negligence provides an alternative basis for denying summary judgment is not before us. In view of our reversal of the court's ruling on qualified immunity, appellees may raise the issue of whether appellant's actions constitute gross negligence on remand.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY REVERSED; CASE REMANDED FOR
FURTHER PROCEEDINGS CONSISTENT WITH THIS
OPINION.

COSTS TO BE PAID BY APPELLANT.