560 A.2d 587

**Princess Wyonina SHIFFLETT**

v.

**STATE of Maryland.**

**No. 1797, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 6, 1989.

Certiorari Granted Nov. 28, 1989.

152

Clarence W. Sharp, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County on the brief, Towson), for appellee.

Submitted Before MOYLAN, ROSALYN B. BELL
and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Princess Wyonina Shifflett, appellant, was charged on
February 17, 1988, with alcohol related driving offenses and
a battery. She was subsequently charged, on April 1, 1988,
with two additional batteries and with resisting arrest. A
jury in the Circuit Court for Baltimore County convicted her
of all three batteries, of resisting arrest, and of driving
under the influence of alcohol. Following her sentence to a
total of six years imprisonment, she has appealed, present-
ing for our resolution:

    1. Did the trial court improperly decline to propound
    questions on voir dire requested by appellant?

    2. Did the trial court err in the instructions given to the
    jury?

We answer both questions in the negative and, so, affirm.

The facts out of which this appeal has evolved began on
the parking lot of a 7–11 store in Dundalk when the car
appellant was driving was involved in an accident. Appel-
lant left the scene of the accident prior to the arrival of the
police. While the police were still on the scene, however,
she was observed driving past the parking lot. One of the
officers stopped her and, at that time, smelled a strong odor
of alcohol. Appellant was arrested when she failed a field
sobriety test. Although she was handcuffed, by the time
they arrived at the police precinct, appellant had worked
one hand free. She swung the still cuffed hand at the
officer, causing the handcuff to strike the officer on the
hand and mouth. Appellant was subsequently subdued by
other officers.

Appellant was released on bail on a bond secured by
Bob's Bail Bond. When the indemnitor on the bond ex-
pressed an unwillingness to continue to be responsible on
the bond, agents of Bob's Bail Bond went to a bar in
Dundalk for the purpose of gaining control of appellant
and, if necessary, surrendering her in discharge of the

bond.  They alerted the police as to their proposed action. When appellant was informed that her bail bond had been revoked, a fight ensued.  The police intervened and, after subduing her, arrested her, charging her with resisting arrest.

1

■ Appellant's first argument concerns questions propounded by the court on voir dire to determine prospective juror bias with respect to the testimony of law enforcement officers.  On that subject, the court inquired:

> Now, as you know, ladies and gentlemen, the basis of the jury's verdict must be the evidence that is presented in the courtroom.  The verdict can't be based on any kind of prior notion or preconception.
>
> The rule is that every witness is to be judged on the basis of the testimony he or she supplies from the witness stand, not on the basis of something about that person's occupation or anything else about the person.
>
> So, what this means when it is applied to the police officers is no one who would give more weight to the testimony of a policeman merely because he is a [policeman] should serve as a juror.  Likewise, no one who would give less weight to the testimony of a policeman merely because he is a policeman should serve as a juror.
>
> So, if there is any of you who would be unable to evaluate the testimony of a law enforcement officer the same way you would evaluate the testimony of anyone else, then please stand at this time.

No one responded to the inquiry.

The court subsequently made the following related inquiry:

> Now ladies and gentlemen the next question that I have for you involves employment by or association with a law enforcement organization.  Now, a law enforcement organization is a police department, a prosecutor's office.  It doesn't matter whether it is a Federal law enforcement organization or a State law organization.  That doesn't

matter. This question applies to you personally, but also to your friends and close relatives.

The question has several parts. The reason that I am asking it maybe ought to be explained at this time. Just as I asked you a question to make sure that no one would be a juror who would evaluate testimony of a police officer in a different way merely by virtue of the status of a police officer, no one should be a juror who would evaluate the evidence by virtue of employment by or association with a law enforcement organization.

So, that's what we're after here; if you feel that you would be unable to serve as a fair and impartial juror because you or a close friend or relative of yours is now or was in the past employed by or closely associated with a law enforcement organization. So, if you or a close friend or relative of yours is now or has in the past been employed by or closely associated with a law enforcement organization and if that employment or association would in any way impair your ability to be fair and impartial in this case, then please stand at this time.

Once again, there was no response to the inquiry.

Appellant was not at all satisfied with these inquiries; nor was she ecstatic about the court's conduct of voir dire in general. She sought further and more specific inquiries, reasoning:

I think I have a right to know if any of them are related to law enforcement officers. There are policemen sitting out there by the dozen that are going to testify in the case and there might be some wives of police officers sitting on that panel, and I would like to know if there are any relations to jurors.

Appellant also expressed concern that none of the voir dire questions were propounded "in the language that was submitted on behalf of the Defendant." [1] The court refused to

---

1. There is some force to the State's argument that appellant waived the objection by approving the jury as ultimately impanelled. *See Booth v. State,* 306 Md. 172, 185, 507 A.2d 1098 (1986), *vacated in part*

supplement voir dire. On appeal, appellant characterizes that refusal as error, which, she argues, requires reversal of her convictions.

Viewed in the light of the questions actually propounded and the purpose of the voir dire examination, *i.e.*, to develop information from which it may be ascertained whether a prospective juror should be disqualified for cause, it is obvious that the trial court did not abuse its discretion when it refused to propound the questions proposed by appellant. *See* Maryland Rule 4–312(d). We reiterated in *Williams v. State*, 77 Md.App. 411, 421, 550 A.2d 722 (1988), *cert. granted on other grounds*, 315 Md. 140, 553 A.2d 706 (1989), quoting *McGee v. State*, 219 Md. 53, 58–59, 146 A.2d 194 (1959), that "[q]uestions not directed to a specific ground for disqualification but which are speculative, inquisitional, catechising or 'fishing', asked in aid of deciding peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them." The ruling of the court was well within the parameters of that rule. While it is true that propounding the questions requested by appellant would have permitted appellant to use her peremptory challenges more intelligently, *see Couser v. State*, 36 Md.App. 485, 496, 374 A.2d 399 (1977), *aff'd*, 282 Md. 125, 383 A.2d 389, *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978), because the effect of law enforcement employment or associations on the jurors' ability to render a fair and impartial decision was inquired into, it would not have developed disqualifying information.

2

Central to appellant's argument on this issue are the nature and extent of a bail bondsman's authority to take charge of his principal prior to forfeiture of the bond. In

---

*on other grounds*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *White v. State*, 300 Md. 719, 729, 481 A.2d 201 (1984), *cert. denied*, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 337 (1985). *See also Holmes v. State*, 65 Md.App. 428, 439–40, 501 A.2d 76 (1985).

this regard, appellant contends that the trial judge incorrectly instructed the jury. She sought an instruction as follows:

19) Members of the jury: During the trial of this case you heard testimony in respect to an attempted detention or apprehension of the defendant by employees of a bail bond agency. Therefore, you are informed that the law in Maryland regarding the authority of a private citizen to apprehend and/or arrest another is governed by the common law. In Maryland a private person has authority to arrest without a warrant only when (a) there is a felony being committed in his or her presence or where a felony has been committed and the private person has reasonable probable cause to believe the person he arrests has committed it; or (b) a misdemeanor is being committed in the presence or view of the private person which amounts to a breach of the peace. If you find that the bail bond agents had in fact arrested, detained, or apprehended the defendant contrary to the legal authority stated, then your verdict as to the charges flowing from this event should be Not Guilty.

*Stevenson v. State*, 287 Md. 504, 513, 413 A.2d 1340 (1980) was cited as authority. The trial court declined to give the instruction, opting, instead, to instruct the jury:

Now, under the law, the person who is in the position of serving as custodian of someone out on bail, in other words the bail bondsman, has a contractual right to return that person to the Court. The crime of resisting arrest is the resisting of the lawful arrest and, in this sense the Defendant does not have the right to resist a lawful arrest but does have the right to resist an unlawful arrest.

Now, it is alleged against the Defendant that on the 1st of April she resisted arrest. So, you must be persuaded that she was lawfully arrested and that rather than submit to the authority of the lawful arrest she engaged in conduct designed to prevent the officers from taking lawful custody of her.

Now, an officer who observed someone commit a battery on another person has a right to arrest the person who commits the battery. So, if you are persuaded that the arrest was lawful and that the Defendant resisted, refused to submit, physically resisted that lawful arrest, then you are to find the Defendant guilty of resisting arrest.

*    *    *    *    *    *

Now there was also a question about a bounty hunter. I thought I covered that when I talked about the fact that a bail bondsman has a right to go to the person who is out on bail and return that person to the Court. That's the law. It is really a contractual agreement. When someone is desirous of employing a bondsman, then the bondsman takes the person out with the understanding that the bondsman has a right to take custody of the person and return the person to court at some point.[2]

Appellant's argument that the authority of a bail bondsman to effect an arrest of its principal is no greater than that of a private citizen's right to effect an arrest is simply not the law of Maryland. In point of fact, the authority of a bail bondsman in relationship to his principal is quite a bit broader. *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 369–72, 21 L.Ed. 287 (1872); *Frasher v. State*, 8 Md.App. 439, 446, 260 A.2d 656 (1970); Wharton's Criminal Procedure § 324 (14th Ed.1986). In *Taylor*, the Supreme Court of the United States elucidated the relationship:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State, may arrest him on the

---

2. This latter instruction was given in response to a question from the jury.

Sabbath, and if necessary, may break and enter his house for that purpose. The seizure is not made by virture of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner.... In [Anonymous,] 6 Modern [231], it is said:

> "The bail have their principal on a string, and may pull the string whenever they please and render him in their discharge."

*Id.*, 83 U.S. at 371–72. Wharton is to like effect:

> In order for the surety to have effective control over the principal, the surety is regarded as subrogated to the rights and means possessed by the state for that purpose. Thus, the surety may seize his principal for the purpose of surrendering him in discharge of the surety's liability and, to the extent that it is necessary, may restrain the principal of his liberty. This right of arrest by the surety may be exercised at any time prior to discharge. Moreover, absent a statute providing otherwise, the principal may be taken into custody on any day of the week including Sunday, and any time of the day or night. This right of the surety has been likened to the right of a sheriff to rearrest an escaping prisoner.
>
> Although the surety has the right to requisition official aide to take the principal into custody, for the purpose of surrendering him in the discharge of the surety's liability, the surety has the right to take the principal into custody himself, or to deputize others suitable of age and discretion to do so. (Footnotes omitted)

Section 324 at 201–02. We adopted the Wharton formulation in *Frasher.* 8 Md.App. at 445, 260 A.2d 656.

Maryland Rule 4–217(h)(2) [3] and (i)(3) [4] are not inconsistent. Indeed, they are but codifications of the common law

---

3. (h) *Voluntary Surrender of the Defendant by Surety.*
   A surety on a bail bond who has custody of a defendant may procure the discharge of the bail bond at anytime before forfeiture by:

   *      *      *      *      *      *

---

4. See note 4 on page 160.

right of the bail bondsman to re-arrest his or her principal either before or after forfeiture of the bond.

The Maryland Rules do not codify every right that a bail bondsman had at common law in regards to his principal. Does that mean that those rights not codified have been abrogated? The answer is clearly no. *See Lutz v. State,* 167 Md. 12, 15, 172 A. 354 (1934), in which the Court of Appeals, addressing this very point, opined:

> "In 25 R.C.L. 1054, it is said that: 'It has been said that statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law. The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act or thereof invoked, that their survival would in effect deprive it of its efficacy and render its provision nugatory.' "

*See also Gray v. State,* 43 Md.App. 238, 241–43, 403 A.2d 853 (1979), *cert. denied,* 286 Md. 747 (1979) and Md. Rule 1–201. Looking to the purpose and intent of Maryland Rule

---

(2) delivery of the defendant and the commitment order to the custodian of the jail or detention center, who shall thereupon issue a receipt for the defendant to the surety....

**4.** (i) *Forfeiture of Bond*

&ast; &ast; &ast; &ast; &ast; &ast;

(3) *Satisfaction of Forfeiture.*
Within 90 days from the date the defendant fails to appear, which time the court may extend to 180 days upon good cause shown, a surety shall satisfy any order of forfeiture, either by producing the defendant in court or by paying the penalty sum of the bond. If the defendant is produced within such time by the State, the court shall require the surety to pay the expenses of the State in producing the defendant and shall treat the order of forfeiture satisfied with respect to the remainder of the penalty sum.

4–217,[5] formerly Maryland Rule 722 and M.D.R. 722, we find no mention, or even suggestion, of an intent to change the rights of a bail bondsman to rearrest his or her principal before or after forfeiture of the bond.[6]

Since Maryland Rule 4–217 leaves intact the common law rights of a bail bondsman to arrest his or her principal, appellant's contention that the bail bondsman acted without authority in this case is without merit.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

5. In 63 Op.Atty.Gen., 49, 57 (1978), it was stated that one of the purposes of the Rule's predecessor "... was to make uniform throughout the State the procedures to be followed in dealing with bail bonds."

6. "But even where there are statutory provisions that the bail may arrest the principal on a bailpiece or certified copy of the recognizance, these provisions have sometimes been held to be cumulative and not to affect the common law right to arrest without process. See 4 *Wharton's Criminal Law and Procedure* (Anderson) §§ 1833–1835 pp. 674–677". *Frasher v. State*, 8 Md.App. 439, 445, 260 A.2d 656, *cert. denied*, 400 U.S. 959, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).