771 A.2d 478

Charles Terrence COLLINS,

v.

STATE of Maryland.

No. 277, Sept. Term, 2000.

Court of Special Appeals of Maryland.

April 26, 2001.

Michael R. Malloy, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Leigh S. Halstad, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore and M. Kenneth Long, Jr., State's Attorney for Washington County, Hagerstown, on the brief), for appellee.

Submitted before JAMES R. EYLER, SONNER, JAMES S. GETTY (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Charles Terrence Collins, appellant, was convicted, on an agreed statement of facts, at a bench trial in the Circuit Court for Washington County, of possession of marijuana with intent to distribute and simple possession. The court sentenced appellant to five years imprisonment, all suspended, and three years probation on the possession of marijuana with intent to distribute conviction. The court imposed a concurrent one-year term, and concurrent probation, on the possession of marijuana conviction.

On appeal, appellant presents the following questions:

1. Did the lower court err by denying [his] motion to suppress the marijuana evidence that was obtained as a result of the entry into [his] apartment by two bail bondswomen acting as agents of a police officer?

2. Did the lower court err by failing to merge [his] conviction for possession of marijuana into his conviction for possession of marijuana with intent to distribute?

We hold that the circuit court erred in ruling that the bail bond agents were not acting as State actors, and consequently, we remand for reconsideration of the motion to suppress.

### Evidence at Suppression Hearing

At the hearing on the motion to suppress, Officer Carl Hook was the only witness. He testified that he was advised by another officer to meet with two persons in the business of arranging bail bonds, Tanya Baer and Donna Morris. They advised him that they wanted to apprehend a "wanted subject," Dale Michael Estep, and that he had been seen going into 126 East Avenue in Hagerstown. Officer Hook accompanied the bail bond agents to that residence. He explained that he was performing a "service to stand by," which meant that he was not to intervene unless there was a criminal matter that took place. He testified that such service was routinely provided under the circumstances present here. Officer Hook had no information other than that supplied to him by the bail bond agents.

The residence at 126 East Avenue was an apartment house containing four apartments. There was a porch on the front of the residence with an entrance from the porch to the apartment in question.

After Officer Hook and the two agents arrived at the entrance to the apartment, Officer Hook knocked on the door. The door was opened by appellant, who came out and closed the door behind him. Officer Hook stated that they were there for a "wanted subject" and asked for permission to come in to check the residence. Appellant advised that Estep was not there, that he had not seen him for two weeks, and refused entry into the residence. Ms. Baer stated that she was going to enter the residence whether appellant liked it or not. Appellant again refused but called another person, who came outside to the porch. Officer Hook testified that Ms. Baer spoke to that person and knew him as "Jimmy." "Jimmy" stated that Ms. Baer could go inside and check the residence. Ms. Baer and Ms. Morris went inside. Although appellant was standing at the door, he did not object; nor did he try to stop them. Officer Hook stood near the door, which was still open. The officer said that he detected an odor of burnt marijuana coming out of the residence.

When Ms. Baer and Ms. Morris exited the apartment, Ms. Baer stated that she had seen approximately fifteen marijuana plants inside, ranging in size from "beginning plants" to three feet in height. Officer Hook testified that he called for backup and three officers responded. Officer Hook explained that he called for backup because of the odor of marijuana. After the other officers arrived, Ms. Baer advised Officer Hook that she had just seen appellant running in the alley at the rear of the apartment. Officer Hook then noticed appellant running with a black plastic garbage bag. Officer Hook pursued appellant on foot. Appellant dropped the bag, and the police took him into custody. In the bag, although not visible prior to searching it, the police found "pot[s] of marijuana plants, high intensity lamp, electric scales, a multi-colored bag that contained marijuana seeds, and a pipe with marijuana residue."

A search warrant was obtained for the apartment, and additional evidence was seized. Appellant moved to suppress the items seized from his person and the apartment, arguing that they were the fruits of the poisonous tree because his arrest was illegal and the warrant was based on information obtained during the bail bond agents' prior illegal entry.

The suppression court ruled that (1) Officer Hook was credible; (2) the bail bonds agents were not State actors; and (3) Officer Hook had probable cause to arrest appellant and search the bag, based upon (A) the smell of marijuana emanating from the apartment, and (B) Ms. Baer's statement that marijuana plants were inside the apartment. Consequently, according to the suppression court, the subsequent search of the apartment pursuant to a warrant was also legal.

*Analysis*

1.

In reviewing the denial of a Maryland Rule 4–252 motion to suppress, we look only to the record of the suppression hearing. We do not consider the record of the trial. *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749 (1987)(quoting *Jackson v. State*, 52 Md.App. 327, 332, n. 5, 449 A.2d 438 (1982)). In considering the evidence presented at the suppression hearing, we extend great deference to the fact-finding of the suppression hearing judge with respect to determining the credibility of the witnesses and in weighing and determining first-level facts. *Perkins v. State*, 83 Md. App. 341, 346, 574 A.2d 356 (1990); *Lancaster v. State*, 86 Md.App. 74, 95, 585 A.2d 274 (1991), *aff'd*, 332 Md. 385, 631 A.2d 453 (1993). We accept the hearing court's findings as to disputed facts unless those findings are clearly erroneous. *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d 430 (1992); *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990). We accept the court's finding in the light most favorable to the State as the prevailing party. *Id.* We then make our own independent constitutional appraisal of the facts. *See Riddick*, 319 Md. at 183, 571 A.2d 1239; *Munafo v. State*, 105 Md.App.

662, 669, 660 A.2d 1068 (1995); *Perkins,* 83 Md.App. at 346, 574 A.2d 356.

Appellant contends that the lower court erred by denying his motion to suppress, because the items seized were as a result of the illegal entry into his apartment by Ms. Baer and Ms. Morris, acting as agents of the State. Appellant explains that his arrest was illegal because, absent knowledge obtained as a result of the illegal entry, there was no probable cause to arrest him or to search his bag, and the evidence seized in the apartment pursuant to a warrant was the fruit of the prior illegal arrest. We agree.

■ The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures by government officials. *See* U.S. Const. amend. IV.[1] While the Fourth Amendment proscribes conduct by state and federal actors, its guarantee does not extend to those searches conducted by private individuals. *See United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Waters v. State,* 320 Md. 52, 58–59, 575 A.2d 1244, *cert. denied,* 498 U.S. 989, 111 S.Ct. 529, 112 L.Ed.2d 539 (1990).

Officer Hook was obviously a State actor, but Officer Hook did not enter the premises. The first question is whether bail bond agents are State actors when pursuing a defaulted principal, in the absence of any involvement by police officers. We recognize that there is authority for the proposition that bail bond agents may be State actors, at least for certain purposes, even without involvement by persons who are clearly State actors.[2]

---

**1.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

**2.** For example, we note that the Fourth Circuit Court of Appeals has stated that Maryland and the bail system co-exist in a symbiotic rela-

██ Based on *Shifflett v. State,* 80 Md.App. 151, 158–59, 560 A.2d 587 (1989) (quoting *Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 369–72, 21 L.Ed. 287 (1872)), *aff'd,* 319 Md. 275, 572 A.2d 167 (1990), and *Waters v. State,* 320 Md. 52, 575 A.2d 1244 (1990), we conclude that bail bond agents are generally not State actors for Fourth Amendment suppression purposes. In *Shifflett,* this Court held and the Court of Appeals affirmed that bail bond agents have broad common law powers to arrest their principal, much greater than that possessed by a private citizen to effect an arrest and, under certain circumstances, greater than that possessed by police officers. *Shifflett,* 80 Md.App. at 158–59, 560 A.2d 587, *aff'd,* 319 Md. at 277–78, 572 A.2d 167. In *Waters,* the Court of Appeals held that a search conducted by a private security guard was not subject to the Fourth Amendment prohibition. *Waters,* 320 Md. at 60, 575 A.2d 1244.

██ Bail bond agents may become State actors, however, based on the facts in a particular case. Generally, when a private party acts for his or her own purpose without police instigation or participation, and subsequently gives seized items to the police, there is no State action. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Knight v. State,* 59 Md.App. 129, 474 A.2d 947 (1984) (trespassing roofer who reported information to police not

---

tionship, thus making bail bond agents vulnerable to civil liability under 42 U.S.C. section 1983. *See Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir.1987). We also note, however, that the statement in *Jackson* was *dicta* because the Court held that, based on the factual findings below, there was actual participation by the police officer and it was not a case of the officer's mere presence. *Id.* at 429. Additionally, there is substantial authority rejecting the symbiotic relationship theory. *See, e.g., Dean v. Olibas,* 129 F.3d 1001, 1006, n. 4 (8th Cir.1997); *Landry v. A–Able Bonding,* 75 F.3d 200, 204–05, n. 5 (5th Cir.1996); *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 553 (9th Cir.1974). The above decisions applied the test for State action in section 1983 actions enunciated in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (whether the deprivation was caused by the exercise of State authority, and if so, whether the person charged with the deprivation could fairly be said to be a State actor). The decisions did not involve motions to suppress under the Fourth Amendment.

State actor); *Ward v. State,* 30 Md.App. 113, 116–17, 351 A.2d 452, *cert. denied,* 277 Md. 742 (1976) (search and seizure by member of family not State action); *Herbert v. State,* 10 Md.App. 279, 290–91, 269 A.2d 430 (1970) (private parties who seized evidence at a party and turned it over to police not State actors). Moreover, the mere presence of a police officer is ordinarily not enough to constitute State action. *See United States v. Kinney,* 953 F.2d 863, 865 (4th Cir.), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2976, 119 L.Ed.2d 595 (1992) ("More than the mere presence of a police officer is necessary to constitute the government action required to implicate Fourth Amendment concerns.").

■ This Court has held that State action "is not measured by the primary occupation of the actor, but by the *capacity* in which he [or she] acts at the time in question." *In re Albert S.,* 106 Md.App. 376, 386–87, 664 A.2d 476 (1995) (quoting *State v. Woods,* 790 S.W.2d 253, 257 (Mo.Ct.App.1990)(in turn quoting *State v. Pearson,* 15 Or.App. 1, 514 P.2d 884, 886 (1973)))(emphasis in original). In order for a private party's capacity or role to equal State action, the private party "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the State." *See Waters,* 320 Md. at 57, 575 A.2d 1244 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); *United States v. David,* 943 F.Supp. 1403, 1409 (E.D.Va.1996).

Several courts have addressed when conduct involving private actors becomes governmental conduct. *See, e.g., United States v. Miller,* 688 F.2d 652 (9th Cir.1982). In *Miller,* the victim of a theft received an anonymous tip that his stolen trailer was on Miller's property. The victim contacted a federal agent and a sheriff. The sheriff noticed a trailer parked next to the frontage road running to Miller's property with a "for sale" sign on it. The victim met with the federal agent and the sheriff and offered to go inspect the trailer as a potential buyer. The victim went to Miller's property, identified his trailer, which was one different from the one for sale

that was visible from the road, and reported this information back to the federal agent and the sheriff. *Id.* at 655. The victim then suggested that he go back to the property to take some pictures. The federal agent followed the victim and positioned himself where he could see but remained off of Miller's property and out of sight. Based on his observations, the federal agent obtained a search warrant for Miller's property. *Id.* at 655–56. The Court of Appeals affirmed the trial court's denial of Miller's motion to suppress, holding that the Fourth Amendment was not violated because the victim's conduct was not instigated by the officers, it was not illegal, and the officers remained out of sight and did not cast a "police aura" around the victim's actions. *Id.* at 657–58.

*Miller* is instructive because it discerned from the case law the following test to determine state action: did the police officer (1) instigate, (2) participate, or (3) knowingly acquiesce in the private party's search in conjunction with an intent by the private party to further the private party's own ends, as opposed to an intent to assist law enforcement. *Id.* at 657; *see* Frederick Alexander & John L. Amsden, *Project: Sixteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1985–86: I. Investigation and Police Practices: Scope of the Fourth Amendment,* 75 Geo. L.J. 713, 714–15 (1987).

This test has been applied by several courts. *See United States v. David,* 943 F.Supp. 1403, 1409 (E.D.Va.1996); *United States v. Cleaveland,* 38 F.3d 1092, 1093 (9th Cir.1994), *amended by* 38 F.3d 1092 (9th Cir.1995); *United States v. Malbrough,* 922 F.2d 458, 462 (8th Cir.1990), *cert. denied,* 501 U.S. 1258, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991); *United States v. Souza,* 223 F.3d 1197, 1201 (10th Cir.2000); *United States v. Simpson,* 904 F.2d 607, 610 (11th Cir.1990); *see also Hooper v. Sachs,* 618 F.Supp. 963, 968 (D.Md.1985), *cert. denied,* 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987)("Courts which have considered the agency question in the context of Fourth Amendment violations focus on two issues: (1) the extent of the involvement of the government, and (2) the purpose or purposes of the private citizen in

conducting the search."); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir.1987)("Our review of the foregoing cases makes clear that ... two critical factors in the 'instrument or agent' analysis are whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends.").

In the case before us, the police officer did not instigate the entry of the residence by the bail bond agents, and the intent of the agents was not to look for evidence of a crime or to otherwise assist the State. The agents' purpose was to look for their defaulting principal. We hold, however, that there was more than mere presence; there was participation by the police officer.

There are a few reported cases dealing with the question before us in the context of a police officer performing a stand by service. In *United States v. Coleman*, 628 F.2d 961 (6th Cir.1980), for example, Coleman was charged in a two-count indictment for firearm violations when a shotgun was found in his truck by Clark, a person hired to repossess Coleman's truck. Clark informed the police that he was going to repossess the truck and asked the officers to accompany him for protection. The police officers did so by following Clark to Coleman's residence, where the truck was parked. The police officers remained in their car, parked approximately a block away. After the repossession, Clark called the officers and asked them to meet him at the police station. The officers did so, and Clark handed them the shotgun that was found in the front seat of the truck. The Court stated that the "position assumed by the police was devised to anticipate and prevent any violent confrontation .... mere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into State action." *Id.* at 964. The court distinguished *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (App.1978), and *Stone Machinery v. Kessler*, 1 Wash.App. 750, 463 P.2d 651 (1970), relied on by the trial court, because in "those cases the local police accompanied the repossessor to the debtor's residence, and together with the repossessor,

confronted the debtor in order to effectuate the repossession. *The affirmative participation by the police sets those cases apart* from the passive surveillance of the police here." *Coleman,* 628 F.2d at 964, n. 1 (emphasis added). *See generally* Wayne R. LaFave & Scott Austin, *Substantive Criminal Law* §§ 1.8(a)-(d)(1986, 2000 Supp.); Paul G. Reiter, Annotation, *Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual,* 36 A.L.R.3d 553 (1971).

■ We have found no case in which the facts have been sufficiently close to the facts before us to declare it on point. In the case before us, the police officer went to the residence, accompanied by the agents, knocked on the door, and asked to enter. After entry was refused, and one of the agents declared that she was going to enter in any event, the officer voiced no objection. We hold that there was sufficient participation by the officer to make the actions by the bail bond agents State action.[3]

As State actors, the bail bond agents did not have a constitutional right to enter the premises unless the entry satisfied one of the well-delineated exceptions to the Fourth Amendment requirements. *See McMillian v. State,* 325 Md. 272, 281, 600 A.2d 430 (1992)(citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The State argues that the bail bond agents had been given consent to enter the apartment. The State asserts that even though the record is devoid of information to indicate that "Jimmy" had authority to give consent, the officer and the agents had a reasonable belief that he possessed the requisite authority to consent to the search. *See Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

---

**3.** Although not relevant to the suppression issue, even if the bail bond agents were not State actors, it is not clear that they had the right to enter the apartment. The record does not reflect if the residence in question was the fugitive's residence. *See Herd v. State,* 125 Md.App. 77, 115, 724 A.2d 693 (1999)(the right of a bail bond agent is as to the fugitive, not as to third parties or the property of third parties).

Consent must be given voluntarily and cannot be coerced. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Turner v. State*, 133 Md.App. 192, 202, 754 A.2d 1074 (2000). When deciding if consent was voluntary we examine the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041; *Turner*, 133 Md.App. at 202, 754 A.2d 1074. A voluntariness determination is a second-level fact-finding function that we review *de novo*. *See Turner*, 133 Md.App. at 202–03, 754 A.2d 1074 (citing *Walker v. State*, 12 Md.App. 684, 693, 280 A.2d 260 (1971)). Great deference is accorded to the trial judge's finding, however. *McMillian v. State*, 325 Md. 272, 288, 600 A.2d 430 (1992)(citing *Gamble v. State*, 318 Md. 120, 128, 567 A.2d 95 (1989)). Informing parties that they have the right to refuse consent to entry is not required for consent to be valid; it is considered part of the totality of the circumstances inquiry. *See Schneckloth*, 412 U.S. at 223, 93 S.Ct. 2041; *Ferris v. State*, 355 Md. 356, 380, 735 A.2d 491 (1999); *Coleman v. Anne Arundel County Police Department*, 136 Md. App. 419, 441–42, 766 A.2d 169 (2001).

The suppression court did not make a finding whether the bail bond agents' entry was pursuant to proper consent. The court denied appellant's motion to suppress, reasoning that the bail bond agents were private actors not subject to the Fourth Amendment, or in the alternative, the police officer still had probable cause to arrest appellant and conduct a search independent of the evidence provided by the bail bond agents as State actors. Because we find that the bail bond agents were State actors, and the police officer's knowledge, including the smell of marijuana, was obtained as a result of an illegal entry,[4] the issue of consent needs to be addressed by the trial court.

---

4. We are not remanding for a determination on whether the smell of marijuana constituted probable cause because the police officer smelled burnt marijuana only as a result of the door being left ajar by the bail bond agents after their entry. The officer also obtained information as to the presence of marijuana plants from one of the agents as a result of their entry and moreover, it was the bail bond agents' entry into the

Consequently, we remand the case to the circuit court without affirmance or reversal, so that it may reconsider appellant's motion to suppress.[5] *See* Md. Rule 8–604(d)(2000); *see also McMillian,* 325 Md. at 288, 600 A.2d 430 ("In the instant case, the Court of Special Appeals improperly usurped the trial court's role of weighing the effect that the illegal entry of the Club had on [appellant's] consent to search. Consequently, we shall remand the case to the trial court . . . .") (citations omitted). On remand, on the evidence offered at the hearing on the motion to suppress, the trial court must evaluate whether it was reasonable for the bail bond agents, as State agents, to reasonably believe "Jimmy" had the right to consent to the search and, if so, whether the consent was coerced.

If the circuit court, upon reconsideration, concludes that appellant's motion to suppress should be granted, the judgments shall be vacated and a new trial shall be ordered. On the other hand, if the court decides that the motion should be denied, the judgments remain in effect, subject to merger of sentences, and appellant may appeal that determination.

### 2.

Appellant also contends that the lower court erred by failing to merge the possession of marijuana count into the possession of marijuana with intent to distribute count.

The State concedes, and we agree, that the court should have merged the sentence for conviction of simple possession into the sentence for conviction of possession of marijuana with intent to distribute. Under the required evidence test, the sentences merge. *See McCoy v. State,* 118 Md.App. 535, 540, 703 A.2d 237 (1997), *cert. denied,* 349 Md. 235, 707 A.2d 1329 (1998).

---

apartment which caused appellant's flight. This evidence was used to make the subsequent arrest of appellant and to obtain the warrant for the search of the apartment.

**5.** The circuit court may request additional oral or written argument.

314

CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR RECONSIDERATION OF THE MOTION TO SUPPRESS EVIDENCE. THE JUDGMENTS REMAIN IN EFFECT UNLESS VACATED BY THE CIRCUIT COURT IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS OPINION. SENTENCE FOR CONVICTION OF POSSESSION OF MARIJUANA VACATED. COSTS TO ABIDE THE RESULT.