2008-NMCA-018

176 P.3d 1154

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Adrian L. GUTIERREZ, Defendant–
Appellant.**

**No. 26,455.**

Court of Appeals of New Mexico.

Nov. 26, 2007.

Certiorari Granted, No. 30,801,
Jan. 22, 2008.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Adrian Gutierrez entered a conditional guilty plea on a felon in possession of a firearm charge and now appeals the district court's denial of his motion to suppress evidence. In this case, police officers were dispatched to a third party's home to assist a bail bondsman in the apprehension of Defendant, who failed to appear for an arraignment earlier that day. Accompanied by the bail bondsman, the officers made a warrantless, nonconsensual entry into the third party's home under circumstances that presented no exigency. Upon finding Defendant asleep on a bed with a .45 caliber handgun under the pillow, the officers arrested him on a felon in possession of a firearm charge.

{2} We conclude that the officers were required to comply with the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution when actively assisting the bail bondsman in apprehending Defendant. Accordingly, because the officers lacked any independent lawful authority to enter the third party's home without either a warrant or a situation that created an exception to the warrant requirement, the district court erred in denying Defendant's motion to suppress. We reverse and remand.

## FACTUAL BACKGROUND

{3} On June 26, 2005, the district court held a suppression hearing to consider the issues argued in this appeal. At the hearing, Officer David Edmondson of the Pecos Valley Drug Task Force testified that on November 22, 2004, he observed Defendant outside of the magistrate court building, where he knew Defendant was supposed to make a court appearance regarding a pending criminal charge. Officer Edmondson then entered the courthouse and went to the courtroom where Defendant's appearance was to take place. Because Defendant did not respond when the court called his case, Officer Edmondson proceeded to obtain a warrant for his arrest and returned outside to serve it on him, but Defendant had already left.

{4} Later that day, Defendant's bail bondsman, Jim Smith, requested police assistance in attempting to apprehend Defendant. Officers Ricardo Huerta and Jonathan Perez of the Artesia Police Department were contacted by police dispatch to assist Mr. Smith. The officers were dispatched to an area where Mr. Smith believed, based solely on information that he received from one of Defendant's relatives, he would find Defendant. Dispatch informed the officers that Defendant was Mr. Smith's defaulting principal and was a felon with an active warrant out for his arrest. At the time the officers received the call, they were not actively pursuing Defendant, they had not seen him, they had no information indicating that anyone within the vicinity of Defendant was in danger, and they were not in possession of either a search warrant or an arrest warrant.

{5} After the officers located Mr. Smith, he directed them to a residence. When Mr. Smith and the officers arrived at the home, the officers knocked loudly at the door and announced their presence by shouting, "Artesia Police Department." There was no answer, so Officer Huerta and Mr. Smith left Officer Perez at the door, walked around the residence, and knocked on and looked through the windows, but they did not hear anything or see anyone. The three men reconvened at the front door and knocked again. The men discovered that the door was unlocked, so one of the officers turned

the doorknob, and Mr. Smith led the way into the home. Mr. Smith and Officer Huerta walked toward the south bedroom and encountered a woman, and Officer Perez walked into the north bedroom, where he found Defendant lying on a bed with his back turned toward him. Officer Perez ordered Defendant to show him his hands, but Defendant kept his hands underneath a pillow. Officer Huerta and Mr. Smith joined Officer Perez in the bedroom and began giving Defendant verbal commands to show them his hands, but Defendant did not respond. Mr. Smith, assisted by Officer Huerta, grabbed Defendant by his sweater and pulled him off the bed. When Defendant was dragged from the bed, a .45 caliber handgun slid out from underneath the pillow. In response, the officers placed Defendant under arrest for being a felon in possession of the firearm and detained him in Officer Perez's police vehicle.

## PROCEDURAL BACKGROUND

{6} On June 6, 2005, Defendant moved to suppress the handgun as evidence, arguing that because there were no exigent circumstances, the officers could not justify the warrantless entry and search of the third party's house where they found him. At the June 26, 2005 suppression hearing, the officers testified that they had no independent authority to enter the home, that they were present only to assist the bail bondsman, and that upon entering and searching the residence, there was no indication of any emergency, violence, or any crime being committed. The State's arguments focused on the broad common law and statutory authority of a bail bondsman to capture and deliver a bonded accused. The State further argued that the officers derived their authority to enter the home to apprehend Defendant from Mr. Smith's right as a bail bondsman to do so.

{7} After considering the arguments, the district court orally denied Defendant's motion to suppress and stated in a subsequent letter decision that the bail bondsman had the right to capture Defendant and that Defendant's possession of the handgun gave police the authority to arrest him. The district court reasoned that "[a] police stand-by in this situation does not violate a[d]efendant's rights[,] and the evidence obtained from his arrest shall not be suppressed" and

emphasized that police assistance in similar situations should be encouraged in order to ensure safer and more controlled captures by bail bondsmen.

{8} After his motion to suppress was denied, Defendant pleaded guilty to his possession of a firearm by a felon charge, reserving the right to appeal the district court's order refusing to suppress the handgun as evidence. Pursuant to the plea, the district court entered judgment against Defendant and sentenced him to eighteen months in prison followed by one year of parole. *See* NMSA 1978, § 31–18–15(A)(10) (2007) (indicating that the basic sentence for a fourth-degree felony is eighteen months' imprisonment). Defendant subsequently filed this appeal.

## ARGUMENTS ON APPEAL

{9} Defendant argues that the district court erred in denying his motion to suppress the handgun for several reasons. First, Defendant contends that the bail bondsman lacked the authority to enter the third party's home without his or her consent in order to apprehend Defendant. Second, Defendant maintains that the bail bondsman's actions are attributable to the State. Finally, Defendant argues that without acting under the proper authority of the bail bondsman and in the absence of any independent authority, such as the existence of exigent circumstances to enter and search the home without a warrant or effective consent, the officers' arrest of Defendant violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

{10} In response, the State first claims that Defendant lacks standing to assert the rights of the third party whose home was entered and searched. The State also argues that Defendant failed to reserve in his plea agreement, and preserve in district court, the issues concerning the bail bondsman (1) because they were not argued at the suppression hearing and (2) because defense counsel stated at the suppression hearing that the bail bondsman's authority to enter the third party's home would not affect the district court's analysis.

{11} In support of the district court's denial of Defendant's motion to suppress, the State argues that the officers were not required to justify their entry and search of the home with a warrant or exigent circumstances because the district court expressly found that the officers were not entering the home for their own purposes but, rather, were assisting the bail bondsman in a "standby" capacity. The State alternatively contends that the bail bondsman acted properly, under his broad statutory and common law authority, in apprehending Defendant and that the officers' actions in assisting him were thus also proper. Lastly, the State argues that the district court entered an illegal sentence by imposing the basic sentence and refusing to apply the habitual offender enhancement for Defendant's three prior felony convictions.

{12} After reviewing the transcript and the briefs, we conclude that Defendant's issues on which we reverse the district court's decision were adequately reserved because they were argued during the suppression hearing and they formed the explicit basis of the district court's ruling. We will not limit the issues that a defendant reserves to those set forth in the written motion when the hearing and decision are based on variations of the same theme, it is clear to all parties that the defendant is intending to reserve the issues raised and decided, and the state does not object that the defendant's argument or court's ruling is outside the reservation. Because of our reversal, it is not necessary to address the legality of the district court's sentence. *See State v. Gutierrez*, 2005–NMCA–015, ¶ 2, 136 N.M. 779, 105 P.3d 332 (declining to address the defendant's challenge to the enhancement of his sentence when the district court's denial of his motion to suppress was reversed).

## STANDING

{13} We begin our analysis by addressing the State's argument that Defendant lacks standing to challenge the constitutionality of the warrantless entry and search of the third party's home. In New Mexico, standing to challenge unlawful searches and seizures "may not be raised for the first time on appeal since it is a fact-based issue." *State v. Porras–Fuerte*, 119 N.M. 180, 183,

889 P.2d 215, 218 (Ct.App.1994). Because standing is fact-based, "[t]he defendant must be alerted to the issue and given the opportunity to present evidence thereon at the trial court level" in order to ensure fairness. *Id.*

{14} Our review of the record reveals that the State raised its standing argument for the first time on appeal. At the suppression hearing, there was no factual development regarding Defendant's alleged lack of standing, no testimony that established the identity of the owner or primary occupant of the residence, and no testimony regarding Defendant's connection to the third party's home. In short, there is no indication that the State attempted to present the fact-based issue of standing until it filed its answer brief in this Court. Therefore, the issue of Defendant's standing to challenge the constitutionality of the search in question in this case is not properly before us on appeal at this time, and we do not consider it in this opinion.

## MOTION TO SUPPRESS

{15} Because we conclude that the State may not raise the issue of standing at this time, we turn to the merits of Defendant's arguments. Defendant contends that his motion to suppress was improperly denied, which is an issue that involves a mixed question of law and fact. *See State v. Weidner*, 2007–NMCA–063, ¶ 5, 141 N.M. 582, 158 P.3d 1025. In determining whether a district court properly denied a motion to suppress, "[w]e review [its] findings of fact for substantial evidence and review [its] legal analysis de novo." *Id.* Furthermore, "[w]e review de novo whether the district court correctly applied the law to the facts, viewing the facts in the light most favorable to the prevailing party." *Id.*

{16} An officer's warrantless entry into a person's home is the exact type of intrusion against which the language of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution is directed. *See State v. Monteleone*, 2005–NMCA–129, ¶ 9, 138 N.M. 544, 123 P.3d 777. In New Mexico, it is well settled

that law enforcement officers may not make a warrantless entry into a residence unless, under the facts known or reason-

ably believed by a prudent and trained police officer, exigent circumstances have been shown indicating that immediate action is necessary to prevent imminent danger to life or serious damage to property, to forestall the imminent escape of a suspect, or to prevent the destruction of evidence.

*Chavez v. Bd. of County Comm'rs*, 2001–NMCA–065, ¶ 17, 130 N.M. 753, 31 P.3d 1027 (internal quotation marks and citation omitted); *see also State v. Ryon*, 2005–NMSC–005, ¶ 23, 137 N.M. 174, 108 P.3d 1032 (" '[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' " (quoting *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980))).

█ {17} At the suppression hearing in the present case, the officers testified that they were not in hot pursuit of Defendant, that they had no warrant for Defendant's arrest, and that they had no information about Defendant that indicated that he posed a particular threat to anyone's life or property. Upon the officers' arrival at the residence, they admitted that they observed no indication of any emergency or violence, that there was no evidence that any crime was occurring, and that they entered the home without obtaining consent from anyone. The officers further testified, and we agree, that they lacked any independent authority to justify their intrusion into the home.

{18} Despite the officers' admitted lack of authority to enter the home, the State nonetheless argues that the district court was correct in concluding that the officers' intentions to assist the bail bondsman cloaked them with constitutional authority to enter the home without a warrant, without any exigent circumstances, and without consent. In making this argument, the State characterizes the district court's determination that the officers were assisting the bail bondsman in a stand-by capacity as a factual finding. As such, the State contends that because it presupposes facts found against Defendant's argument, the district court's determination is a finding of fact that limits our review to substantial evidence and prohibits Defendant from prevailing on any argument regarding the officers' need for independent authority for their actions. We note, however, that the district court's determination that the officers did not enter the home for their own purposes and that they were properly assisting the bail bondsman involves the application of law to fact, which we review de novo. *See Weidner*, 2007–NMCA–063, ¶ 5, 141 N.M. 582, 158 P.3d 1025. Accordingly, we disagree that the district court's determination forecloses any argument from Defendant that the officers' entry into the home must be supported by either a warrant or probable cause and exigent circumstances.

█ {19} When we consider Defendant's argument, we find persuasive the reasoning of the Maryland Court of Special Appeals and Court of Appeals that when an officer's "stand by service" to assist a bail bondsman in apprehending a fugitive becomes "more than mere presence," the officer's participation converts the bail bondsman into a state actor such that the requirements of the Fourth Amendment apply to all participants. *See Collins v. State*, 138 Md.App. 300, 771 A.2d 478, 484–85 & n. 3 (Ct.Spec.App.2001), *aff'd*, 367 Md. 700, 790 A.2d 660, 670–72 (2002); *see also Ryon*, 2005–NMSC–005, ¶ 23, 137 N.M. 174, 108 P.3d 1032 ("Warrantless searches and seizures [by government actors] inside a home are presumptively unreasonable, subject only to a few specific, narrowly defined exceptions."). We have recently stated that "[r]ecognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *Weidner*, 2007–NMCA–063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. As discussed above, none of these exceptions applies in the present case. We see no reason to create a new exception that would allow police officers to circumvent the warrant requirement by "piggybacking" on any arguable authority of a bail bondsman to enter a private home to arrest a principal. Moreover, we note, as was the case in *Collins*, 771 A.2d at 485 n. 3, the record does not reflect that the residence in which Defendant was found was his residence, thereby decreasing the arguability of the bail bondsman's authority to enter this particular home. *See State v. Lopez*, 105 N.M. 538, 543,

734 P.2d 778, 783 (Ct.App.1986). We therefore hold that, absent a warrant or the existence of a recognized exception to the warrant requirement, merely accompanying a bail bondsman to apprehend a bonded accused does not automatically give police officers constitutional authority to enter private homes.

{20} In reaching this conclusion, however, we note that we do not discourage officer assistance in apprehending a bonded accused. An officer may respond to a request for assistance by a bail bondsman, but the response must be limited to actions that are lawful under the Fourth Amendment to the United States Constitution or Article II, Section 10 of the New Mexico Constitution. For example, when an officer, without either a search warrant or the existence of an exception to the warrant requirement, is asked to remain present outside of or near a home in order to ensure the safety of a private citizen, the officer's actions constitute "benign attendance" and "mere acquiescence ... to 'stand by in case of trouble.'" *United States v. Coleman*, 628 F.2d 961, 964 & n. 1 (6th Cir.1980) (reversing the suppression of evidence that was obtained when police officers, standing by while a private citizen repossessed a vehicle, remained in their police unit about a block away from the debtor's home, were engaged in "passive surveillance," and did not actively participate in the repossession of the vehicle). In such a case, the officer would merely be protecting the safety of the public, and the Fourth Amendment would not be implicated. *See id.* The officer's presence outside the home would allow him or her to monitor the situation and to spring into action when appropriate. In contrast, the officers in the present case aggressively participated in the entry and search of the home to apprehend Defendant without either a warrant or the existence of an exception to the warrant requirement. The fact that the bail bondsman might have legitimately feared for his safety did not serve to allow the officers to ignore the requirements of the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution by unconstitutionally assisting him in arresting Defendant in the third party's home.

## CONCLUSION

{21} We hold that the evidence at issue in this case was obtained in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution and should have been suppressed. *See State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 17, 130 N.M. 386, 25 P.3d 225 ("The exclusionary rule requires suppression of the fruits of searches and seizures conducted in violation of the New Mexico Constitution."). We reverse the district court's order denying Defendant's motion to suppress evidence, and we remand for the appropriate additional proceedings.

{22} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.